ORIGINAL

FILED
SEP 1 0 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| FFTF RESTORATION COMPANY, LLC<br>Plaintiff<br>v.<br>THE UNITED STATES,<br>Defendant | CASE NUMBER: 07-659 C<br>JUDGE: Firestone |

**COMPLAINT**

Plaintiff, FFTF Restoration Company, LLC, complains of defendant the United States of America and for its claims of relief against the defendant states as follows:

**I. Nature of the Action**

1. This complaint seeks monetary damages resulting from the U.S. Government's breach of its implied-in-fact contract to consider proposals fairly and honestly in the conduct of federal procurements.

**II. Parties**

2. Plaintiff is FFTF Restoration Company, LLC, with its principal place of business in Richland, Washington.

3. Defendant is the United States, acting through the Department of Energy (the "Government" or "DOE").

## III. Jurisdiction

4. The Court of Federal Claims has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491. The Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress…or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).

## IV. Venue

5. Venue is proper in the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491.

## V. Background

6. On April 18, 2003, DOE issued an Expression of Interest Notice as the first step in the procurement process for the deactivation and decommissioning of the Fast Flux Test Facility in Washington ("FFTF"). For the Plaintiff, this initial step included attendance at a small business conference on July 14-16, 2003, one-on-one meetings with DOE, a site tour, questions and responses, and commenting on a draft Request for Proposals. Plaintiff also established a team from June 2003 through November 2003, hired key personnel, and assigned other personnel to begin work on this procurement. Plaintiff invested 8 months and a total of 1,307 person hours at a cost of $216,384 in preparing for the announced procurement.

7. On December 11, 2003, the United States, through the DOE, issued Solicitation Number DE-RP06-04RL 14600 (the "Solicitation"), as a small business set-aside procurement for deactivation and decommissioning of the FFTF in Washington.

8. The Solicitation was issued after DOE determined that qualified small businesses or consortiums of small businesses were capable of performing a majority of the work, based on responses to a notice issued by DOE on or about April 18, 2003.

9. The Solicitation called for the deactivation and environmental restoration of the FFTF, a 400 megawatt liquid metal cooled test reactor located on the Hanford Site near Richland, Washington. The Solicitation permitted substantial subcontracting to large businesses provided not less than 51% of the total work was performed by small businesses. Acceptable business arrangements to perform the work included: a single small business performing a majority of the work on its own as a prime contractor; an affiliation or team of small businesses performing the entire or majority portion of the work as a prime contractor; or a single or affiliation or team of small businesses joined with a large business entity (or entities) to perform the work. The acquisition was classified under North American Industry Classification System ("NAICS") Code 562910, Environmental Remediation Services, with a small business size standard of 500 employees. According to the Solicitation, the FFTF Closure Project involved facility deactivation, sodium disposition, and facility decommissioning; however, only the deactivation and sodium disposition activities were to be authorized under an initial contract, pending completion of an Environmental Impact Statement and Record of Decision on the decommissioning phase. Facility deactivation was to include the removal of 169 irradiated fuel components stored in sodium filled fuel storage vessels at the FFTF, and packaging the components for approved storage. An additional 18 interim storage casks containing irradiated fuel were to be relocated to alternate storage on the Hanford Site. Deactivation also was to involve the removal of approximately 260,000

gallons of liquid metal (mostly sodium) from the FFTF reactor systems, the two fuel storage vessels, and their auxiliary systems. The FFTF plant, associated support buildings, and associated operating systems and equipment were then to be prepared for decommissioning. Activities associated with sodium disposition included developing an environmentally compliant approach to the disposition of 260,000 gallons of bulk sodium. The contractor was to have the option of transferring the bulk sodium to the "Sodium Processing Facility" at the DOE's Idaho National Laboratory, near Idaho Falls, Idaho, for conversion to sodium hydroxide and subsequent return and use of the converted material by the DOE Office of River Protection in the treatment of high-level tank waste at Hanford. The residual sodium was also to be removed from the plant systems and appropriately dispositioned. The estimated value of the procurement pursuant to an initial Government estimate was more than $500 million.

10. The decision to set aside the procurement for small businesses was consistent with DOE's own internal policies and guidance directing "procurement officials to contract with small businesses unless specific and limited circumstances prevent doing so." GAO-06-501, "Improved Program Management Could Help Achieve Small Business Goal," April, 2006, p. 2. The cited GAO report explored the reasons DOE was unable to meet its small business contracting goals in four of the last five years.

11. Plaintiff submitted an initial, compliant offer in response to the Solicitation on February 17, 2004. Plaintiff's initial offer consisted of about 350 pages.

12. From February 20, 2004 through March 22, 2004 DOE (through the Defense Contract Audit Agency, or DCAA) conducted an extensive audit of the financial

aspects of the proposal. During the week of March 6, 2004, oral presentations, questions, and interviews were conducted between Plaintiff and DOE.

13. On May 28, 2004, contract discussions and negotiations were initiated with Plaintiff.

14. On June 25, 2004, Plaintiff submitted a Final Proposal Revision ("FPR"). Subsequently, DOE/DCAA conducted another extensive audit of the financial aspects of the proposal from July 7, 2004 through July 21, 2004. In total, Plaintiff invested 17,742 person hours and $2,524,398 in preparing its initial proposal, presenting, revising, responding to questions, negotiating, and preparing its final proposal revision.

15. On September 27, 2004, award was made to SEC Closure Alliance, LLC in the amount of $237 million.

16. On September 30, 2004, DOE held debriefings for the unsuccessful offerors.

17. On October 15, 2004, Plaintiff filed a protest of the award at the Government Accountability Office ("GAO"). GAO sustained the protest on January 12, 2005.

18. In January, 2005, the United States Environmental Protection Agency ("EPA") and the Washington Department of Ecology requested deferment of the FFTF contract for higher priority clean-up jobs at Hanford.

19. On March 18, 2005, DOE gave notice to the Plaintiff and other bidders that DOE had determined to be qualified to participate in the procurement that indicated that an amended RFP would be issued in April 2005.

20. On March 29, 2005, the DOE Inspector General (DOE-IG) issued a "Special Report on 'Fast Flux Test Reactor: Re-evaluation of the Department's Approach to Deactivation, Decontamination, and Decommissioning'" (DOE/IG 0683, March 2005) which recommended that DOE reevaluate its closure and cleanup plan for FFTF, citing concerns that included the facility's uncertain end state, whether the project was a high-priority project at the Hanford site, and the lack of experienced staff to oversee contractor work.

21. Between the date of the debriefing on the initial contract award and April 28, 2005, Plaintiff invested an additional 2,453 person hours and $719,935 protesting DOE's award and then reforming the team to participate in another round of this procurement. Of this amount, DOE reimbursed FRC $224,116 for some of the costs of the successful protest.

22. On April 29, 2005, the FFTF amended Solicitation was issued with responses due to DOE by May 31, 2005 which was later extended to June 6, 2005. Under the Amended Solicitation, revised offers were to address two phases of work: deactivation to be conducted in the first phase, and decommissioning and demolition to be conducted in the second phase in the event that DOE determined, by December 31, 2006, to proceed with that phase. The work in the Amended Solicitation amounted to an estimated 16% reduction in the scope of work (based on the reduction in the DOE baseline costs).

23. On June 6, 2005, Plaintiff submitted another Proposal Revision in response to the Amended Solicitation.

24. During the week of June 13, 2005, DOE held oral presentations and interviews with Plaintiff's Key Personnel.

25. On August 25, 2005, DOE further amended the Solicitation and issued discussion questions. Plaintiff responded to the questions on September 12, 2005.

26. Between September 19 and October 7, 2005, numerous additional questions and answers were exchanged between DOE and Plaintiff.

27. On November 14, 2005, DOE notified the Plaintiff and other offerors that additional Final Proposal Revisions would be requested around December 1, 2005, and due on December 9, 2005. DOE did not, however, request the Final Proposal Revisions.

28. DOE cancelled the Amended Solicitation on December 22, 2005. Plaintiff requested a debriefing but DOE denied the request.

29. From the date of issuance of the Amended Solicitation to the date of final cancellation, Plaintiff invested 6,287 person hours and $836,772 in preparing a substantially revised response to the Amended Solicitation and participating in interviews and responses to questions.

30. Since December 22, 2005, DOE has authorized deactivation activities at the FFTF that were included in the original and Amended Solicitation's statement of work. DOE authorized the deactivation under an existing contract with a large business which performs environmental restoration and waste management services at the DOE's Hanford site. DOE's December 22, 2005, announcement of its cancellation of the Amended Solicitation stated plans to "focus on completing the key risk reduction activities at FFTF over the next year and placing the facility in a long-term low-cost

surveillance and maintenance mode – freeing up critical funding to invest in higher-priority work at Hanford in the years ahead." DOE's announcement also stated:

> The first project phase, deactivation, which is currently underway, consists of cleaning and removing fuel, draining liquid sodium from the facility's coolant and storage systems, and shutting down all remaining systems. During the initial competition, bid protest, and second competition, deactivation work has been continuing under incumbent contractor Fluor Hanford. Only a limited amount of fuel remains to be offloaded and just one major sodium tank remains to be drained. DOE anticipates the remaining deactivation activities will be complete within a year, allowing the facility to transition to long-term, low-cost surveillance and maintenance mode.
>
> The final project phase, decommissioning, would take the facility down to its final end state, such as cocooning or demolishing the entire structure to slab-on-grade. This phase is being deferred with today's decision until the higher priority cleanup issues are adequately addressed and the end state is defined through a future Environmental Impact Statement and Record of Decision.

(*DOE News Release*, RL-652, December 22, 2005).

31. Despite being reviewed by the GAO for failing to meet its own goals for small business participation in four of the last five years (*see*, GAO-06-501, "Improved Program Management Could Help Achieve Small Business Goal," April, 2006, p. 14), DOE continues to permit a large business to perform the work that was the subject of the Solicitation and which was solicited as a small business set-aside. The small business procurement policy of the DOE is stated in DOE Acquisition Letter 2005-08, dated June 10, 2005:

> The Contracting Officer shall set aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns offering products of different small business concerns and (2) award will be made at fair market prices.

(*DOE Acquisition Letter 2005-08*, June 10, 2005, p. 4).

By permitting the incumbent large business to continue performance when more than two small businesses made offers at prices below DOE's estimate, DOE remains in violation of its internal small business acquisition policies as expressed in the Acquisition Letter.

32. Although DOE canceled the Solicitation on the grounds that higher priority projects took precedence over the FFTF deactivation and decommissioning, DOE continues to request and allocate appropriations for the project. The FFTF deactivation and decommissioning project was budgeted for:

FY 2003: $35.8 million;
FY 2004: $43.6 million;
FY 2005: $45.7 million;
FY 2006: $45.6 million.

(FY 2003 and 2004 dollar figures from *Department of Energy FY 2005 Congressional Budget Request*, DOE/ME-0036, Vol. 5, p. 419 ; FY 2005 and 2006 dollar figures from *Department of Energy FY 2007 Congressional Budget Request*, DOE/CF-006, Vol. 5, p. 19, February 2006).

The DOE's FY 2007 budget request, issued in February, 2006 (after the Solicitation was canceled), included a request for $34.8 million for FFTF deactivation, which will be used to fund the continued work by the incumbent large business. The February 2006 budget request stated, "In December 2005, DOE decided to complete deactivation by early FY 2007, not to proceed to decontamination, and to transfer the facility to a long-term surveillance and maintenance mode." The budget request further described the progress of the current deactivation (work performed during the small business set-aside procurement) by the incumbent:

> At the end of FY 2005, the sodium has been drained from the primary and secondary heat transport loops, intermediate heat exchangers, reactor vessels, and the Sodium Storage Facility vessel. Sodium-potassium was flushed from the in-containment cooling loops and sodium-potassium was drained from the Fuel

> Storage Facility cooling loop. The sodium drained and transferred to the Sodium Storage Facility constitutes 91 percent of the 260,000 gallons of sodium inventory. Of the original 376 fuel assemblies, 347 fuel assemblies (92 percent) will have been washed, dried, and loaded into above ground Interim Storage Casks. Interim Storage Casks loaded with fuel assemblies were shipped to either the Plutonium Finishing Plant, 400 Area Interim Storage Area or the 200 Area Interim Storage Area.

(*Department of Energy FY 2007 Congressional Budget Request*, DOE/CF-006, Vol. 5, p. 262, February 2006).

The large business incumbent continues to perform deactivation work for DOE, work that could be performed by small businesses in accordance with DOE's own internal guidance. Instead, despite the reallocation of priorities, DOE has again requested millions of dollars to deactivate the site, but has not reissued a solicitation to accomplish this work. And as can be seen from the DOE's summary of the progress of the deactivation of the FFTF site, the incumbent's continued performance along with the decision not to proceed with decontamination has created a situation in which any solicitation issued by the DOE would have a scope of work drastically reduced from the original Solicitation, for which Plaintiff incurred the costs it now claims.

## VI. Cause of Action

**Breach of Implied-In-Fact Contract**

33. DOE breached its implied-in-fact contract with Plaintiff when it cancelled the Solicitation for deactivation and decommissioning of the FFTF site, after over two and a half years, while allowing the work to be conducted by an existing contractor at the Hanford site.

34. When an offeror submits a proposal in response to a government solicitation, an implied-in-fact contract arises between the offeror and the government. *Health Sys. Mktg. & Dev. Corp. v. United States*, 26 Cl. Ct. 1322 (1992). Under this

implied-in-fact contract, the government is obligated to consider submitted proposals fairly and honestly. *Id.* at 1326 (citing *Heyer Prods. Co. v. United States*, 135 Ct. Cl. 63, 69, 140 F.Supp. 409, 412 (1956)).

35. The implied-in-fact contract is violated if the government acts in an arbitrary or capricious manner. *Health Systems*, supra at 1326 (citing *KECO Indus. v. United States*, 203 Ct. Cl. 566, 574, 492 F.2d 1200, 1203 (1974)). The government's procurement decision is arbitrary or capricious if: (1) government officials acted in bad faith, (2) there is a complete lack of any reasonable basis for the procurement decision, or (3) there was a violation of statutes or regulation. *Health Systems*, 26 Cl. Ct. at 1236.

36. The implied-in-fact contract to consider proposals fairly and honestly extends to procurements in which the government cancels the solicitation. *Id.* In that case, the U.S. Agency for International Development (AID) issued a solicitation for health care consulting and related services on a sole-source basis. AID terminated negotiations with the offeror, effectively cancelling the solicitation, and no contract award was made. *Id.*

37. Although the Court did not, in its initial decision on the *Health Systems* case, determine whether the government acted arbitrarily and capriciously, the Court determined that an implied-in-fact contract existed between the plaintiff and the government because plaintiff submitted a proposal. The Court further determined that plaintiff would be entitled to bid preparation costs if the government breached that implied contract. *Id.* at 1326 (citing *KECO*, 203 Ct. Cl. at 574, 492 F.2d at 1203; *Dynalectronic Corp. v. United States*, 4 Ct. Cl. 424, 428-29 (1984)).

38. In this case, Plaintiff submitted two separate proposals for the Solicitation, first in response to the DOE's initial RFP issued in 2003 and then in response to an amended RFP issued in 2005. The Government therefore had an obligation to consider Plaintiff's proposals fairly and honestly. The Government breached the implied-in-fact contract with Plaintiff by first issuing a Solicitation and then making an award decision improperly, arbitrarily continuing the proposal process while at the same time allowing certain work covered in the Solicitation to be conducted by an existing contractor at the site, and ultimately canceling this Solicitation in December 2005 after failing to provide timely notification to the Plaintiff of its plan to cancel the Solicitation, notwithstanding a continuing requirement for deactivation and decommissioning services at the FFTF site. In doing so, the government breached its implied-in-fact contract with Plaintiff by encouraging Plaintiff to continue to invest time and money in a proposal process that was to be terminated.

39. Despite a lengthy and contentious procurement process that included months of proposal revisions, extensive cost and price audits and analysis, a contract award, a subsequent protest at the Government Accountability Office that was sustained, followed by the issuance of an Amended Solicitation and almost a year more of proposal revisions, oral presentations and key personnel interviews, DOE cancelled the Solicitation. During all of this time, Plaintiff invested a substantial amount of money, time and effort to submit its proposals and related information to DOE. These resources have all been wasted because DOE has, without a reasonable basis, cancelled the Solicitation and continued the work with a large business contractor.

40. Plaintiff spent a total of 27,789 person hours and $4,073,373 in preparing for the procurement, submitting an initial proposal, participating in a protest, submitting a revised proposal, and participating in numerous required procurement activities. Plaintiff is entitled to these costs as damages from the government resulting from the breach of its implied-in-fact contract to consider submitted proposals fairly and honestly when it cancelled the Solicitation with no reasonable basis.

## VII. Damages

41. Plaintiff suffered total damages in the amount of $4,073,373 due to the Government's breach of its implied-in-fact contract that includes: (i) time, labor, materials, experts, consultants, and attorneys; (ii) Discussions, Q&A, and proposal revisions; and (iii) unreimbursed protest costs

## VIII. Prayer for Relief

WHEREFORE, Plaintiff prays for relief as follows:

1. Judgment against the United States in a total amount of $4,073,373.

2. Attorneys fees in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412.

3. Other monetary and injunctive relief the Court determines is appropriate.

Respectfully submitted,

William A. Shook
Kirkpatrick & Lockhart
Preston Gates Ellis LLP
1601 K Street N.W.
Washington, D.C. 20006
(202) 778-9000
(202) 778-9100

September 10, 2007