**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| FFTF RESTORATION COMPANY, LLC | ) | |
| Plaintiff | ) | No. 07-659 |
| | ) | (Judge Firestone) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**STATEMENT OF THE ISSUE** .......... 2

**STATEMENT OF THE CASE** .......... 2

**ARGUMENT** .......... 4

- **I. Legal Standard** .......... 4
- **II. The Implied-In-Fact Contract Of Good Faith And Fair Dealing, Identified By The Court of Claims Some 50 Years Ago, Has Not Been Eliminated By Statute Or The Courts.** .......... 5
- **III. Defendant's Reliance On The Passage Of ADRA For The Elimination Of This Court's Jurisdiction In This Instance Is Misplaced.** .......... 9
- **IV. Plaintiff Pled The Elements Of An Implied-In-Fact Contract And Its Breach.** .......... 16

**CONCLUSION** .......... 17

# TABLE OF AUTHORITIES

## CASE LAW

Block v. United States,
66 Fed.Cl. 68 (2005) .......... 9

Celtech, Inc. v. United States,
24 Cl.Ct. 269 (1991) .......... 7, 8

Esch v. United States,
77 Fed. Cl. 582 (2007) .......... 4

Flast v. Cohen,
392 U.S. 83 (1968) .......... 5, 17

Flexfab, LLC v. United States,
424 F.3d 1254 (Fed. Cir. 2005) .......... 16

Garchik v. United States,
37 Fed. Cl. 52 (1996) .......... 7

Henke v. United States,
60 F.3d 795 (Fed. Cir. 1995) .......... 4

Heyer Prods. Co., Inc. v. United States,
135 Ct.Cl. 63 (1956) .......... 5, 6

Kawa v. United States,
77 Fed. Cl. 294 (2007) .......... 4

L-3 Commc'ns Integrated Sys., L.P. v. United States,
__ Fed. Cl. __, 2007 WL 4208804 (Nov. 26, 2007) .......... 6

Lion Raisins, Inc. v. United States,
52 Fed. Cl. 629 (2002) .......... 9

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) .......... 4

Scanwell Lab., Inc. v. Shaffer,
424 F.2d 859 (1969) .......... 5

Schism v. United States,
316 F.3d 1259 (Fed. Cir. 2002) .......... 16

S.K.J. & Assoc., Inc. v. United States,
67 Fed. Cl. 218 (2005) .......... 9

Standard Mfg. Co., Inc. v. United States,
7 Cl.Ct. 54 (1984) .......... 7

United States v. Donruss Co.,
393 U.S. 297 (1969) .......... 10

Wetsel-Oviatt Lumber Co., Inc. v. United States,
40 Fed.Cl. 557 (1998) .......... 17

**STATUTES**

28 U.S.C. 1491(a)(1) .......... 16

142 Cong. Rec. S6155 (daily ed. June 12, 1996) .......... 11, 12-15

Administrative Dispute Resolution Act of 1996, Pub. L. 104-320, 110 Stat. 3870 (1996) .......... 2, 9-10, 11

H. Rep. No. 104-841, 104th Cong., 2d Sess. 9-10 (1996) .......... 15

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| FFTF RESTORATION COMPANY, LLC | ) | |
| Plaintiff | ) | No. 07-659<br>(Judge Firestone) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff FFTF Restoration Company, LLC ("Plaintiff" or "FRC") hereby respectfully submits its response to the Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims.

At this juncture, at issue in this matter is whether Plaintiff properly pled the existence and breach of an implied-in-fact contract between Plaintiff and the government. Plaintiff is not contesting the specific terms of a solicitation nor the specific evaluation of the proposals submitted. Rather, Plaintiff is seeking monetary compensation for the government's breach of the implied-in-fact contract with Plaintiff whereby the government promised to consider Plaintiff's offer fairly and honestly in exchange for Plaintiff going to the expense and effort of submitting a compliant proposal in response to a solicitation issued by the government.

The facts pled by Plaintiff reasonably assert that the government encouraged Plaintiff to go to the substantial expense of submitting an offer and to continue to expend significant resources in revising that offer while the government, through its duly

authorized officials knew that the work to be performed under the solicitation was being performed by a large business contractor and that it was unlikely that a contract would ever be awarded pursuant to the solicitation. The government's breach of its contractual duty to deal fairly and honestly with the Plaintiff is the ultimate matter before this Court.

While it is of some legal interest as to whether the passage of the Administrative Dispute Resolution Act of 1996, Pub. L. 104-320, 110 Stat. 3870 (1996) ("ADRA") eliminated the implied-in-fact contract of good faith and fair dealing as a basis for bid protest jurisdiction in this Court, that issue is not before this Court and need not be decided. What is before this Court is whether Plaintiff has properly pled the existence of an implied-in-fact contract and the damages Plaintiff sustained as a result of the breach of that contract by the government.

## STATEMENT OF THE ISSUE

Does the Court of Federal Claims have jurisdiction over an action alleging that the government breached its implied-in-fact contract to deal fairly and honestly with a prospective contractor that is responding to a solicitation issued by the government?

## STATEMENT OF THE CASE

The facts pled by Plaintiff in its complaint are straightforward. In brief, on December 11, 2003, the government, acting through the Department of Energy ("DOE") issued a small business set-aside solicitation for the deactivation and decommissioning of the Fast Flux Test Facility in Washington. The work to be performed included facility deactivation which was to consist of the removal of 169 irradiated fuel components and the relocation of 18 interim storage casts. The work also included the removal of approximately 260,000 gallons of liquid metal (mostly sodium) and preparation for

permanent disposal. The value of the contract was estimated at $500 million at the time the solicitation was issued.

On February 17, 2004, Plaintiff submitted a 350 page compliant offer. After government audits, other reviews, and discussions, Plaintiff prepared and submitted a revised offer on June 25, 2004. Plaintiff invested 17,742 person hours in preparing its offer through June 25, 2004 at a total cost of $2,524,398.

On September 27, 2004, DOE awarded a contract to another small business, SEC Closure Alliance, LLC. That award, following a protest filed by Plaintiff at the Government Accountability Office, was determined to be in violation of procurement law and the contract was terminated. Plaintiff invested $719,935 in not only pursuing the protest but reforming the team necessary to continue to respond to DOE's revised solicitation.

On April 29, 2005, DOE, having previously indicated to Plaintiff that an amended solicitation would be forthcoming, issued an amended solicitation. The amended solicitation reduced the scope of work by 16 percent and on June 6, 2005, Plaintiff submitted a revised proposal based on its prior proposal. After discussions and another solicitation amendment as well as exchanges, DOE announced that final proposal revisions would be requested around December 1, 2005. Plaintiff invested an additional $836,772 in responding to the amended solicitation. DOE did not request final proposal revisions but rather cancelled the entire solicitation on December 22, 2005, and refused to provide Plaintiff with a debriefing with regard to the cancellation.

Unbeknownst to Plaintiff, at the same time Plaintiff was being encouraged to invest its resources in preparing responsive proposals, DOE was continuing to have a

large business contractor perform the work identified in the small business set-aside solicitation. At the same time, DOE officials were concluding that the solicitation would be cancelled rather than awarded. DOE did not inform Plaintiff of these actions but rather continued to encourage them to invest resources in responding to the solicitation and requiring them to answer various questions and details about its proposal. This claim follow that breach.

## ARGUMENT

### I. Legal Standard

"Tucker Act jurisdiction is conferred upon this Court when a party alleges an implied contract with the United States." Kawa v. United States, 77 Fed. Cl. 294, 303 (2007). When subject matter jurisdiction is challenged, the plaintiff must establish jurisdiction by a preponderance of the evidence. Esch v. United States, 77 Fed. Cl. 582, 587 (2007), *citing*, Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). In determining whether or not the Court of Federal Claims has subject matter jurisdiction over an action, the court will "assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). Plaintiff has alleged a valid basis for objecting to DOE's breach of the implied-in-fact contract created when DOE sought offers and continued to encourage revisions to those offers at a time when DOE knew but did not disclose that no new award would be made and that the work was being assigned and performed by a large business contractor.

Plaintiff recognizes that it has a heavy burden in this instance. That burden will either be met or not as the case proceeds. The determination of the validity of Plaintiff's

claim is not to be decided at this jurisdictional point. The correct analysis of the threshold question of standing requires the court to review the petitioner's status, not the merits of the petitioner's case. *See*, Flast v. Cohen, 392 U.S. 83 (1968); *see also*, Spruill v. Merit Systems Protection Board, 978 F.2d 679, 689 (Fed. Cir. 1992).

## II. The Implied-In-Fact Contract Of Good Faith And Fair Dealing, Identified By The Court of Claims Some 50 Years Ago, Has Not Been Eliminated By Statute Or The Courts.

At least as far back as 50 years ago, the courts, in construing a 1919 Supreme Court case, have recognized that when the government enters into the commercial marketplace in order to procure goods and services, an implied-in-fact contract is created between the government and the offerors who would seek to do business with the government. The terms of that implied-in-fact contract include the government's promise to consider offers submitted fairly and honestly. In Heyer Prods. Co., Inc. v. United States, 135 Ct.Cl. 63 (1956), this Court's predecessor, when presented with a complaint that alleged that the government had no reasonable basis for the procurement decision it made, stated:

> It was an implied condition of the request for offers that each of them would be honestly considered, and that that offer which in the honest opinion of the contracting officer was most advantageous to the Government would be accepted. No person would have bid at all if he had known that 'the cards were stacked against him.' No bidder would have put out $7,000 in preparing its bid, as plaintiff says it did, if it had known the Ordnance Department had already determined to give the contract to the Weidenhoff Company. It would not have put in a bid unless it thought it was to be honestly considered. It had a right to think it would be. The Ordnance Department impliedly promised plaintiff it would be. This is what induced it to spend its money to prepare its bid.
>
> * * *
>
> That promise was broken, shamefully broken, if plaintiff's petition states the facts. If the facts there stated are true, the conclusion seems inescapable that the Ordnance Department knew from the beginning they were going to give

> Weidenhoff the contract. The advertisement for bids was a sham, done only to appear to comply with the law, to clothe their apparently dishonest purpose with the habiliments of legality. If these allegations are true, they practiced a fraud on plaintiff and on all other innocent bidders. They induced them to spend their money to prepare their bids on the false representation that their bids would be honestly considered.
>
> This implied contract has been broken, and plaintiff may maintain an action for damages for its breach.

Heyer Prods. Co., 135 Ct.Cl. at 66-67.

And more recently, this Court has stated:

> Before enactment of the Administrative Dispute Resolution Act of 1996, Pub.L. No. 104-320, 110 Stat. 3870 (1996) (ADRA), the Court of Federal Claims' jurisdiction over a bid protest was predicated on the implied contract between the Government and prospective bidders to treat the bidder's proposal fairly, equally, and consistently with the agency's solicitation of bids. Keco Indus., Inc. v. United States, 192 Ct. Cl. 773, 780 (1970); Heyer Prods. Co. v. United States, 147 Ct. Cl. 256, 177 F. Supp. 251, 252 (1959) ("If in the instant case the [agency], in rejecting plaintiff's bid, did not act in good faith, but arbitrarily and capriciously, it breached its implied promise when it solicited bids, for the breach of which plaintiff may recover the expenses it had incurred in submitting its bid."). Although ADRA obviated the need to base the COFC's protest jurisdiction on a breach of this implied-in-fact contract to consider bids fairly, the statute in no way eliminated a protestor's ability to challenge arbitrary and capricious conduct, such as bias or an unfair evaluation, which would also constitute a breach of the implied contract of fair dealing. *See*, *e.g.*, Hunt Bldg. Co. v. United States, 61 Fed. Cl. 243, 273 (2004); Unified Architecture & Eng'g, Inc., 46 Fed. Cl. 56, 60-61, aff'd, 251 F.3d 170 (Fed. Cir. 2000). Section 1491(b) expressly provides that this Court has jurisdiction over "an action by an interested party objecting . . . to the award of a contract." 28 U.S.C. § 1491(b) (2000). The statute does not limit the legal theories on which such an "objection" to a contract award might be based. Whether conduct be characterized as an arbitrary and capricious agency action or a breach of the implied duty to consider proposals fairly, such conduct is actionable in a bid protest.

L-3 Commc'ns Integrated Sys., L.P. v. United States, __ Fed. Cl. __, 2007 WL 4208804 at *7 (Nov. 26, 2007) (footnote omitted).

In between Heyer and L-3 Commc'ns Integrated Sys., L.P., this Court has repeatedly found that its jurisdiction covered the implied contract with regard to the

solicitation process engaged in by the government as well as describing its various terms.

In Standard Mfg. Co., Inc. v. United States, 7 Cl.Ct. 54, 58-59 (1984), the Court stated:

> The essence of Heyer Products Co., Inc. v. United States, 135 Ct.Cl. 63, 140 F.Supp. 409 (1956), and its progeny is that, when defendant invites prospective contractors to respond to a request for offers to supply government procurement needs, the invitation is accompanied by the implied condition that each response will be "honestly considered," Heyer Products, 135 Ct.Cl. at 69, 140 F.Supp. 409. If the government is to be "given the benefit of the competition of the market," "each bidder is given the chance for a bargain," and the invitation necessarily gives rights to, and imposes obligations upon, both the issuer of the invitation and the bidder who responds to it. Id., 135 Ct.Cl. at 70, 140 F.Supp. 409 (quoting from United States v. Purcell Envelope Co., 249 U.S. 313, 39 S.Ct. 300, 63 L.Ed. 620 (1919).

Standard Mfg. Co., Inc., 7 Cl.Ct. at 58-59. (Subsequent cases have suggested that formal responses are required to establish an implied-in-fact contract, whereas Standard Mfg. involved responses to invitations to express interest. *See*, *e.g.*, Garchik v. United States, 37 Fed. Cl. 52 (1996). Such holdings are irrelevant in this case because there is no dispute that Plaintiff submitted formal responses to DOE.). Similarly, this Court has stated in Celtech, Inc. v. United States, 24 Cl.Ct. 269 (1991):

> … "Heyer stated a broad general rule which is that every bidder has the right to have his bid honestly considered by the Government, and if this obligation is breached, ... the injured party has the right to come into court to try and prove his cause of action." Keco Industries, Inc. v. United States, 192 Ct.Cl. 773, 780, 428 F.2d 1233, 1237 (1970) ("Keco I" ). Keco I confirmed that "any party who can make a prima facie showing of arbitrary and capricious action on the part of the Government in the handling of a bid situation [has] standing to sue." Id. 192 Ct.Cl. at 779, 428 F.2d at 1237.
>
> Keco Industries, Inc. v. United States, 203 Ct.Cl. 566, 492 F.2d 1200 (1974) ("Keco II" ), stated that the "ultimate standard" for assessing fair and honest consideration is "whether the Government's conduct was arbitrary or capricious toward the bidder-claimant." Keco II, 203 Ct.Cl. at 574, 492 F.2d at 1203. Keco II identified four general principles that control all or some of these claims: (1) subjective bad faith on the part of procuring officials; (2) lack of any reasonable basis for the administrative decision; (3) degree of discretion that applicable statutes and regulations give to procurement officials; and, possibly, (4) proof that pertinent statutes or regulations were violated. Id. at 574, 492 F.2d at 1203-

> 04. The court added that "[t]he application of these four general principles may well depend on (1) the type of error or dereliction committed by the Government, and (2) whether the error or dereliction occurred with respect to the claimant's own bid or that of a competitor." Id. at 574, 492 F.2d at 1204.
>
> * * *
>
> Arbitrary and capricious behavior encompasses more than favoritism or discrimination between competing bidders. The principles enunciated in Keco II embrace conduct such as bad faith, failure to make decisions on a rational basis, and violation of pertinent statutes and regulations, which may occur in either competitive or non-competitive situations.

Celtech, Inc., 24 Cl.Ct. at 273-274.

In this instance, Plaintiff has alleged that the government induced it to submit a bid and to continue to expend money on the revision of its bid while the government knew and had already decided that no award would be made and was, in fact, having the work performed by a large business contractor. There is no other reasonable explanation for the government's action in this instance. This is not a case where the need for the services was eliminated by a change in technical circumstances—the government continued to purchase the needed services from a large business concern. This is not a case where Congress denied money for the needed services—the services continued. This is not a case where the government properly rejected Plaintiff's proposal because it was materially deficient in some manner. Rather, this is a case where the government, for unknown reasons arbitrarily and in private chose to discontinue a procurement while at the same time encouraging its small business competitors, including Plaintiff, to continue to expend money on preparing proposals and revised proposals. This court has jurisdiction to determine whether there was an actual breach of the contract created when the government requested offers to its solicitation and the amount of damages incurred as a result of the breach of that contract.

**III. Defendant's Reliance On The Passage Of ADRA For The Elimination Of This Court's Jurisdiction In This Instance Is Misplaced.**

Defendant cites to a number of cases of this Court in support of its proposition that ADRA eliminated this court's jurisdiction over implied-in-fact contracts. *See* Block v. United States, 66 Fed.Cl. 68, 76 (2005); S.K.J. & Assoc., Inc. v. United States, 67 Fed. Cl. 218 (2005); Lion Raisins, Inc. v. United States, 52 Fed. Cl. 629 (2002). At issue is section 12 of ADRA[1] which states in its entirety:

> SEC. 12. JURISDICTION OF THE UNITED STATES COURT OF FEDERAL CLAIMS AND THE DISTRICT COURTS OF THE UNITED STATES: BID PROTESTS.
>
> (a) Bid Protests.--Section 1491 of title 28, United States Code, is amended--
> (1) by redesignating subsection (b) as subsection (c);
> (2) in subsection (a) by striking out paragraph (3); and
> (3) by inserting after subsection (a), the following new subsection:
> "(b)(1) Both the Unites States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.
> "(2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.
> "(3) In exercising jurisdiction under this subsection, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.
> "(4) In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.".
> (b) Effective Date.--This section and the amendments made by this section shall take effect on December 31, 1996 and shall apply to all actions filed on or after that date.
> (c) Study.--No earlier than 2 years after the effective date of this section, the United States General Accounting Office shall undertake a study regarding the

[1] The other 11 sections of ADRA deal with the reauthorization of alternative dispute resolution methods in the federal government.

concurrent jurisdiction of the district courts of the United States and the Court of Federal Claims over bid protests to determine whether concurrent jurisdiction is necessary. Such a study shall be completed no later than December 31, 1999, and shall specifically consider the effect of any proposed change on the ability of small businesses to challenge violations of Federal procurement law.

(d) Sunset.--The jurisdiction of the district courts of the United States over the actions described in section 1491(b)(1) of title 28, United States Code (as amended by subsection (a) of this section) shall terminate on January 1, 2001 unless extended by Congress. The savings provisions in subsection (e) shall apply if the bid protest jurisdiction of the district courts of the United States terminates under this subsection.

(e) Savings Provisions.--

(1) Orders.--A termination under subsection (d) shall not terminate the effectiveness of orders that have been issued by a court in connection with an action within the jurisdiction of that court on or before December 31, 2000. Such orders shall continue in effect according to their terms until modified, terminated, superseded, set aside, or revoked by a court of competent jurisdiction or by operation of law.

(2) Proceedings and applications.--

(A) a termination under subsection (d) shall not affect the jurisdiction of a court of the United States to continue with any proceeding that is pending before the court on December 31, 2000.

(B) Orders may be issued in any such proceeding, appeals may be taken therefrom, and payments may be made pursuant to such orders, as if such termination had not occurred. An order issued in any such proceeding shall continue in effect until modified, terminated, superseded, set aside, or revoked by a court of competent jurisdiction or by operation of law.

(C) Nothing in this paragraph prohibits the discontinuance or modification of any such proceeding under the same terms and conditions and to the same extent that proceeding could have been discontinued or modified absent such termination.

(f) Nonexclusivity of GAO Remedies.--In the event that the bid protest jurisdiction of the district courts of the United States is terminated pursuant to subsection (d), then section 3556 of title 31, United States Code, shall be amended by striking "a court of the United States or" in the first sentence.

Because the plain language of the ADRA at issue does not address the government's position that Section 12 somehow eliminated the implied-in-fact contract the government enters into when issuing solicitations, the Court is free to examine the legislative history to Section 12. United States v. Donruss Co., 393 U.S. 297, 302 (1969) (relying on legislative history to interpret the accumulated earnings tax because "the language of the statute [did] not provide an answer to the question" at issue). That

legislative history clearly and unambiguously supports the position that Section 12 was enacted in order to eliminate bid protest jurisdiction of the federal district courts after a period of time, but in no way supports the proposition that the 50-year old doctrine of an implied-in-fact contract for good faith and fair dealing created when the government entered the commercial marketplace and solicited bids was being eliminated by Congress.

A search of the legislative history reveals that it was the Senate that first passed Section 12 as part of it consideration of the Federal Streamlining Act of 1994. 142 Cong. Rec. S6155 (daily ed. June 12, 1996). However, the House of Representatives rejected the change and the provision was removed. Id.

When it came time to consider the reauthorization of ADRA, Senator Cohen[2] proposed a floor amendment during consideration of ADRA that included Section 12. In his statement, Senator Cohen makes clear that the purpose of Section 12 was to eliminate U.S. District Court bid protest jurisdiction that had been created by the D.C. Circuit in Scanwell. There was no mention or discussion by Senator Cohen or others concerning the elimination jurisdiction over implied-in-fact contracts. Senator Cohen stated:

> There are two amendments to S. 1224 before the Senate for consideration. The first amendment is designed to increase the efficiency of our procurement system by consolidating jurisdiction over bid protest claims in the Court of Federal Claims. The amendment would reverse the decision of the D.C. Circuit in Scanwell Lab., Inc. versus Shaffer (1969), that permitted bid protests to be filed in any district court across the country. Providing district courts with jurisdiction to hear bid protest claims has led to forum shopping and the fragmentation of Government contract law. Consolidation of jurisdiction in the Court of Federal Claims is necessary to develop a uniform national law on bid protest issues and end the wasteful practice of shopping for the most hospitable forum. Congress established the Claims Court--now the Court of Federal Claims--for the specific purpose of

---

[2] Senator Cohen was, of course, one of the Senate experts in federal procurement law having been a co-author of the Competition in Contracting Act of 1984.

> improving the administration of the law in the areas of patents, trademarks, Government contracts, Government employment, and international trade. Scanwell jurisdiction frustrates this purpose and deprives litigants of the substantial experience and expertise the Court of Federal Claims has developed in the Government contracting area.
>
> The Information Technology and Management Reform Act of 1996, which I authored, eliminated the authority of the General Services Board of Contract Appeals to entertain bid protests on information technology contracts and left the General Accounting Office as the single extra-agency administrative forum for such actions. My amendment to S. 1224 follows this path of reform by creating a single forum for all bid protest litigation, which will lead to the development of more uniform, and thus more predictable, law.
>
> Identical legislation passed the Senate as part of the Federal Acquisition Streamlining Act, but was rejected in conference. The Department of Justice and Office of Management and Budget strongly support the addition of this legislation to the ADR Act.

142 Cong. Rec. S6156 (daily ed. June 12, 1996). In support of his statement and position, Mr. Cohen had inserted into the Congressional Record a letter from the Department of Justice that confirmed that what was being eliminated by Congress was the protest jurisdiction of the U.S. district courts as created by the D.C. Court of Appeals for in Scanwell. That letter states:

> U.S. Department of Justice
> Office of Legislative Affairs,
>
> *Washington, DC, April 12, 1996.*
>
> Hon. William S. Cohen,
> *Chairman, Subcommittee on Oversight of Government Management and the District of Columbia, Committee on Governmental Affairs, U.S. Senate, Washington, DC.*
>
> Dear Mr. Chairman**:** The Administration supports your efforts to enact legislation that would make one small but vital improvement to the handling of bid protests arising from the award of Federal contracts--the elimination of district court jurisdiction over bid protests (the so-called Scanwell cases). [Footnote 1]

> [Footnote 1] *Scanwell Lab., Inc.* v. *Shaffer*, 424 F.2d 859, 869, 137 U.S. App. D.C. 371, 381 (1969) (held, a contractor making a prima facie showing alleging arbitrary or capricious action, or an abuse of discretion, by an agency or contracting officer in making the award of a contract, has standing to sue in district court under the Administrative Procedure Act).

In disputes between an agency and a contractor after the award of a contract, Congress has previously recognized the need for a uniform national body of law to guide both Federal procurement officials and Federal contractors. The same need for nationwide uniformity exists for bid protests. The current forum shopping between the Federal district courts and the Court of Federal Claims only encourages needless litigation in a search for the most hospitable forum, and results in disparate bodies of law between the circuits. There is simply no need to have multiple judicial bodies to review bid protests of federal contacts.

In the past, Congress has recognized the need for nationwide uniformity in several areas of the law, and established the Claims Court (now the Court of Federal Claims) and the Court of Appeals for the Federal Circuit to achieve that result. Federal Courts Improvement Act of 1982 (FCIA) Pub. L. No. 97-164. The purpose of the FCIA was to improve 'the administration of the law in the areas of patents, government contracts, merit system protection, trademarks and international trade.' H. Rep. No. 97-312, 97th Cong., 1st Sess. 17 (1981). As a result of the enactment of the FCIA, the Court of Federal Claims was made the sole judicial forum for resolution of contract disputes between the contractor and the agency. The very same need exists for nationwide uniformity in the handling of bid protests.

By eliminating the authority of the General Services Board of Contract Appeal to entertain bid protests of the award of information technology contracts, the recently-enacted defense authorization bill for fiscal year 1996 (Pub. L. No. 104-106) took a significant step forward in the handling of bid protests by leaving the General Accounting Office as the sole remaining extra-agency administrative forum. The process of procurement reform should continue by eliminating Scanwell jurisdiction, and by creating a single judicial forum to govern all bid protest litigation, both prior to and after award. While there is good reason to apply local state law, as district courts are required to do when they adjudicate torts under the Federal Tort Claims Act, it is simply inappropriate to have different interpretations of Federal contracts applied, depending upon where the contractor resides or where the contract will be performed. This results in inconsistent application of legal principles and an unwieldy body of procurement law.

Our concerns about varying results in the district courts is not hypothetical. For example, the district court in *Advanced Seal Tech., Inc.* v. *Perry,* 873 F. Supp. 1144 (N.D. Ill. 1995), disagreed with the district court's holding in *Abel Converting, Inc.* v. *United States,* 679 F. Supp. 1133 (D.D.C. 1988), regarding the burden of proof borne by the protestor to establish grounds for injunctive relief. Similarly, the district court in *Washington Mechanical Contractors, Inc.* v. *United*

*States Dept. of the Navy,* 612 F. Supp. 1243 (N.D. Cal. 1984), disagreed with the district court's decision in *Robert E. Dereckto of Rhode Island, Inc.* v. *Goldschmidt,* 506 F. Supp. 1059 (D. R.I. 1980), regarding the quantum of proof necessary to invalidate an award of a contract. In addition, the district court in *Metric Systems Corp.* v. *United States Dept. of the Air Force,* 673 F. Supp 439 (N.D. Fla. 1987), disagreed with the holding in *Acme of Precision Surgical Co., Inc.* v. *Weinberger,* 580 F. Supp. 490 (E.D. Pa. 1984), that Federal district courts have both pre- and post-award bid protest jurisdiction. These cases show that, since Federal district court judges rarely have the opportunity to review bid protests, as might be suspected, the results vary from court-to-court.

Legislation should seek to accomplish three important goals. First, it should achieve a uniform and consistent body of precedent governing bid protests, by providing interested parties with a choice of only one administrative and one judicial forum for the resolution of bid protests. Second, it should discourage forum shopping between the remaining tribunal and court by imposing a similar, if not identical, standard and scope of review in both fora. Finally, it should impose a standard and scope of review which both recognizes the deference to the contracting agency in conducting procurements and also limits expensive, time-consuming and resource-intensive discovery.

As Mr. Steven Kelman, Administrator for Federal Procurement Policy, testified before your subcommittee last July:

'With its nationwide jurisdiction and contract expertise, the Court of Federal Claims could effectively and efficiently serve as a unified judicial forum operating in the national interest. This would avoid the unfairness of forum shopping. At the same time, it would not prevent small businesses from having their day in court inasmuch as the Court of Federal Claims is authorized to hold hearings throughout the country to minimize inconvenience and expense to litigants.'

In summary, the problems associated with district court bid protest activity can be effectively avoided by vesting judicial bid protests authority, both pre- and post-award, exclusively in the Court of Federal Claims and imposing a deferential standard of review and limited scope of review similar to that used by the General Accounting Office. With national jurisdiction, this court would effectively serve as a unified judicial forum with contract expertise, eliminating forum shopping and promoting the application of consistent legal principles.

We urge Congress to take immediate action to eliminate Scanwell jurisdiction in the district courts. We would be happy to work with you to ensure enactment of legislation that would meet this important objective. The Office of Management and Budget has advised that there is no objection from the standpoint of the Administration's program to the presentation of this report.

> Sincerely,
>
> Andrew Fois,
> *Assistant Attorney General.*

142 Cong. Rec. S6156-57 (daily ed. June 12, 1996).

Of particular note, the Scanwell case at issue did not cite to or even mention as a basis for district court jurisdiction over bid protests the implied-in-fact contract of good faith and fair dealing.[3]

A similar statement is found in the ADRA Conference Report.

> Section 12--House recedes to Senate amendment with modifications. This section consolidates federal court jurisdiction for procurement protest cases in the Court of Federal Claims. Previously, in addition to the jurisdiction exercised by the Court of Federal Claims, certain procurement protest cases were subject to review in the federal district courts. The grant of exclusive federal court jurisdiction to the Court of Federal Claims does not affect in any way the authority of the Comptroller General to review procurement protests pursuant to Chapter 35 of Title 31, U.S. Code.
>
> This section also applies the Administrative Procedure Act standard of review previously applied by the district courts (5 U.S.C. sec. 706) to all procurement protest cases in the Court of Federal Claims. It is the intention of the Managers to give the Court of Federal Claims exclusive jurisdiction over the full range of procurement protest cases previously subject to review in the federal district courts and the Court of Federal Claims. This section is not intended to affect the jurisdiction or standards applied by the Court of Federal Claims in any other area of the law.

H. Rep. No. 104-841, 104th Cong., 2d Sess. 9-10 (1996).

As a result, there is no evidence either in the plain language of Section 12 or in the direct legislative history of Section 12 that Congress actually eliminated or intended to eliminate the implied-in-fact contract of good faith and fair dealing as a basis of

---

[3] Scanwell found that "a contractor making a prima facie showing alleging arbitrary or capricious action, or an abuse of discretion, by an agency or contracting officer in making the award of a contract, has standing to sue in district court under the Administrative Procedure Act." Andrew Fois, Letter to Senator William Cohen (April 12, 1996) *reprinted at* 142 Cong. Rec. S6156-57 (daily ed. June 12, 1996).

jurisdiction in the Court of Federal Claims that had been the rule of law for 40 years by 1996. Indeed, the basis for jurisdiction over implied-in-fact contracts was left in tact by Congress. *See* 28 U.S.C. 1491(a)(1). As a result, this Court has jurisdiction over Plaintiff's claim of the breach by the government of its implied-in-fact contract with the government.

## IV. Plaintiff Pled The Elements Of An Implied-In-Fact Contract And Its Breach.

An implied in fact contracts exist when there is (1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance; and (4) actual authority on the part of the government's representative to bind the government. Flexfab, LLC v. United States, 424 F.3d 1254, 1265 (Fed. Cir. 2005); *citing*, Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (*en banc*). Plaintiff has properly pled these elements and the government does not dispute them. The government issued the solicitation at issue with the full intention of having small business concerns respond, fully recognizing that such a response would require the expenditure of significant resources. Plaintiff, in correctly and fully responding to each and every request fully intended to respond to the government's solicitation. Consideration was exchanged when the government promised to consider Plaintiff's proposal fairly and honestly and Plaintiff went about expending the resources to prepare a compliant proposal. There is no dispute that the government's solicitation called for offers to be submitted in response to the solicitation and Plaintiff accepted the terms understanding that the government would consider its proposal in a fair and honest manner. Finally, there is no dispute or allegation that the solicitation was issued by anyone but a contracting officer with full authority to issue such solicitation and by doing so had the authority to enter into a contract with Plaintiff promising

Plaintiff that is a fair and honest process would be established. Furthermore, as also stated by this Court:

> Government reservation of the right to reject bids on a government contract does not absolve the government from its obligation to fairly and honestly consider a contractor's bid. See Prineville Sawmill Co., 859 F.2d at 912. If the government breaches its implied duty to fairly and honestly consider a contractor's responsive bid, the contractor may seek relief, including equitable relief, in the Court of Federal Claims. See 28 U.S.C. § 1491.

Wetsel-Oviatt Lumber Co., Inc. v. United States, 40 Fed.Cl. 557, 565 (1998).

As stated above, at this point in time, Plaintiff need not prove its case that the Government breached its obligations when it entered into the implied-in-fact contract. Rather, Plaintiff only needs to plead the non-frivolous elements of an implied-in-fact contract in order for this Court to take jurisdiction. Flast, 392 U.S. at 83. This Plaintiff has done.

## CONCLUSION

Based on the foregoing, this Court has jurisdiction to hear Plaintiff's case and we therefore respectfully request that this court deny Defendant's Motion to Dismiss.

Respectfully submitted,

s/ William A. Shook
William A. Shook
Kirkpatrick & Lockhart
Preston Gates Ellis LLP
1601 K Street, N.W.
Washington, DC 20006
Tel: (202) 661-6256
Fax: (202) 778-9001

Date: December 17, 2007