IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FFTF RESTORATION COMPANY, LLC , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-659C |
| v. | ) | (Judge Firestone) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant, the United States, respectfully submits this reply in support of its Rule 12(b)(1) motion to dismiss for lack of jurisdiction. Plaintiff, FFTF Restoration Company, LLC (FRC), ignores this Court's unambiguous precedent, which mandates that any cause of action that might have been available under an alleged implied-in-fact contract to consider bids fairly was superceded by statute when Congress explicitly delineated the scope of the Court's jurisdiction and provided a new standard of review for lawsuits challenging the lawfulness of government procurement decisions, i.e., "bid protests."

Rather than attempting to distinguish the Court's numerous holdings that an "implied-in-fact" contract cause of action pursuant to 28 U.S.C. § 1491(a) was superceded by enactment of the Dispute Resolution Act of 1996 (ADRA), 28 U.S.C. § 1491(b)(1), FRC continues to rely upon pre-ADRA cases -- as opposed to the Court's jurisdictional statute and later cases construing that provision -- as a

basis for jurisdiction.

FRC's claim should be rejected for at least three fundamental reasons.

First, the ADRA superceded the implied-in-fact contract theory as the basis for challenging the propriety of any aspect of the contract solicitation process. The ADRA, by its own terms, limits challenges to withdrawals of solicitations to those withdrawals that violate some statute or regulation. Because the "implied-in-fact" contract theory that some Courts held to be available pursuant to 28 U.S.C. §1491(a)(1) no longer applies to bid protest cases, the Court lacks jurisdiction to entertain a claim that does not fit within the limited waiver of sovereign immunity provided by 28 U.S.C §1491(b)(1).

Second, FRC concedes by omission that its complaint falls within the holdings of the numerous persuasive decisions of this Court that we cited in our motion. Indeed, it is axiomatic that amendment of a statute making a specific cause of action more precise will, by force of law, supersede the prior less specific provision for that cause of action. That is all that the Court did by repeatedly rejecting the cause of action that FRC attempts to advance.

Third, the secondary materials that FRC quotes extensively are irrelevant and, anyhow, demonstrate only that the ADRA was intended to change the "standard" and "scope" of review in challenges to procurements.

## **ARGUMENT**

### II. The Court Lacks Jurisdiction To Entertain This Action Because FRC Has Failed To Claim That DOE Violated Any Statute Or Regulation

The ADRA grants the Court jurisdiction to "render judgment on [1] an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or [2] to a proposed award or [3] the award of a contract or [4] any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Likewise, the ADRA mandates that, "[i]n any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5." 28 U.S.C. § 1491(b)(4). Therefore, under the Court's jurisdictional statute, review is only available for an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement" pursuant to the standards of the Administrative Procedures Act (APA). Like the ADRA, the APA provides for this ultra vires standard of review -- challenges to agency action not in accord with statute or regulation. 5 U.S.C. § 706(2)(C), (D).

As shown in our motion to dismiss, the complaint fails to assert "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). However, in enacting the

ADRA, Congress made clear that, in bid protest situations, it intended the Government only to be bound by actual statutes and regulations, not by "implied" contracts. Because FRC's claim lies outside the only jurisdictional provision that expressly addresses claims "in connection with a procurement or a proposed procurement," it is barred for want of a waiver of sovereign immunity.

"Waivers of sovereign immunity must be 'unequivocally expressed.'" Yancheng Baolong Biochemical Products Co., Ltd. v. United States, 406 F.3d 1377, 1382 (Fed. Cir. 2005) (quoting United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992); citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990)). The Supreme Court has found that "firmly grounded in [their] precedents" is the fact that "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text" and "will not be implied." Lane v. Pena, 518 U.S. 187 at 192 (1994). FRC "has not pointed to any language in [any statute] that unequivocally expresses a waiver of sovereign immunity for liability [under an implied contract theory to collect damages in connection with a procurement or a proposed procurement], and according to Supreme Court precedent, we cannot imply one." Yancheng, 406 F.3d at 1382.

FRC's reliance upon pre-ADRA cases attempts to imply a waiver of sovereign immunity to challenge a withdrawal of a solicitation under a much more

favorable standard of review than Congress provided for its exact claim in the Court's jurisdictional statute. Such reasoning is absurd and, as discussed below, the Court correctly held, in every case addressing this issue, that enactment of a specific jurisdictional provision addressing challenges "in connection with a procurement or a proposed procurement" precludes alternative theories.

## II. The Court's Congruent ADRA Precedent Merits Dismissal

FRC acknowledges that we "cite[d] to a number of cases of this Court in support of [our] proposition that ADRA eliminated this [C]ourt's jurisdiction over implied-in-fact contracts." FRC Br. at 9 (citing Block v. United States, 66 Fed. Cl. 68, 76 (2005); S.K.J. & Assoc., Inc. v. United States, 67 Fed. Cl. 218 (2005); Lion Raisins, Inc. v. United States, 52 Fed. Cl. 629 (2002) (Lion Raisins I)). FRC does not even attempt to distinguish these cases and, thus, concedes by omission that this body of authority is directly on-point. FRC's reliance upon pre-ADRA cases as well as cases where the Court did possess jurisdiction under section 1491(b)(1), is therefore inapposite. See FRC Br. at 5-8.

FRC's arguments fail to overcome the Court's persuasive reasoning in Block, S.K.J., Lion Raisins, and other post-ADRA decisions holding that any "fiction" of an implied contract with respect to objections to the procurement process did not survive enactment of the bid protest statute. In all cases

addressing this issue, the Court held that the codification of a cause of action and scope and standard of review acted to occupy the field with respect to challenges to the solicitation process. "[A]fter the Tucker Act was amended in 1996 by the ADRA to give the Court of Federal Claims jurisdiction over both pre-award and post-award bid protest cases, the need to rely on a 'virtual implied contract' to fairly and honestly consider bids was eliminated." Block, 66 Fed. Cl. at 77. Indeed, with the statutory amendment, "objections to the procurement process must [now] be based on claims identified in . . . 28 U.S.C. § 1491(b)(1)." Id.

As the Court further explained, because section "1491(b) specifically is oriented toward bid protest claims, [this] rais[es] a presumption that Congress intended that its provisions and limitations control in bid protest situations." Lion Raisins, Inc. v. United States, 52 Fed. Cl. 115, 120 (2002) (Lion Raisins II) (citing Keene Corp. v. United States, 508 U.S. 200, 209 (1993); O'Neill v. HUD, 220 F.3d 1354, 1361 (Fed. Cir. 2000)). The Court thus reasoned that, "[t]o state that section 1491(b)(1) supersedes the implied-contract theory of bid protest jurisdiction under section 1491(a)(1) is merely to say that, because section 1491(b)(1) encompasses all claims that could have been brought under the former statute and more, it obviates the need for the implied-contract theory." Id.; see CCL Service Corp. v. United States, 43 Fed. Cl. 680, 687 (1999) ("Legislation

superseded th[e] fiction" of the "implied contract to have the involved bids fairly and honestly considered."). The Court simply followed the maxim that, "'[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.'" Pierce County, Wash. v. Guillen, 537 U.S. 129, 145 (2003) (quoting Stone v. INS, 514 U.S. 386, 397 (1995)).

The Court's reasoning is strong and its holdings are correct. FRC obviously "object[s] to the procurement process," Block, 66 Fed. Cl. at 77, and this case is a "bid protest situation[]." Lion Raisins II, 52 Fed. Cl. at 120. "[L]ook[ing] to the true nature of the action," Norsk Hydro Canada, Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (quotations omitted), results in an objection to the procurement process, which the Court lacks jurisdiction to entertain here.

Furthermore, as the Court noted in the cases above, FRC's arguments would render the statutory right of action to challenge "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement" superfluous. 28 U.S.C. § 1491(b)(1). Assuming existence of an implied-in-fact contract to consider bids fairly "in connection with a procurement or a proposed procurement," there would be no need for a statute providing a much more limited scope and standard of review for the Court to address complaints arising from identical facts. It is axiomatic that "statutes should be read so far as possible to

give independent effect to all their provisions." Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 724 (citing Ratzlaf v. United States, 510 U.S. 135, 140-41 (1994)). Indeed, there is "[a] reluctance to treat statutory terms as surplusage." Id.; see Gustafson v. Alloyd Co., 513 U.S. 561, 574 (1995) ("[T]he Court will avoid a reading which renders some words altogether redundant."). As did the Supreme Court, we respectfully request that the Court "decline to say [Congress] included the words ['any alleged violation of statute or regulation in connection with a procurement or a proposed procurement'] for no purpose." Gustafson, 513 U.S. 561 at 575.

## III. The Secondary Materials Upon Which FRC Relies Demonstrate That Congress Intended To Replace Any Then Existing Basis For Bid Protest Cases With A New Statutory Basis

FRC maintains that a snippet of a conference report, a senator's remarks, and a letter from the Department of Justice, indicate congressional intent that plaintiffs could initiate bid protest cases, at their discretion, under either section 1491(a)(1) or (b)(2). FRC Br. at 11-16. This line of argument fails because FRC seeks an impermissible "implied" waiver of sovereign immunity. Moreover, the cited legislative history does not support FRC's argument but, rather, shows only intent that claims such as this be subject to the ADRA/APA standard and scope of review.

Given the specific jurisdictional provision that encompasses withdrawals of solicitations, FRC appears to argue that the secondary materials contain an implied waiver of sovereign immunity. However, "[a] statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text." Lane, 518 U.S. at 192. Rather, "the 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text." Id. This expression is absent here.

Moreover, the secondary materials support the Court's reasoning in Block, S.K.J., Lion Raisins, and other post-ADRA cases -- not FRC's flawed argument. The materials show that the Congress and Executive Branch intended to provide an entirely new scope and standard of review for bid protest cases -- the APA standard of review. See FRC Br. at 15 (quoting H. Rep. No. 104-841, 104th Cong., 2d Sess. 9-10 (1996)). Indeed, the quoted report indicated intent that the scope and standard of review procurement challenges be changed to incorporate the APA standard of review. See also id. at 14 (quoting 142 Cong. Rec. S6156-57 (daily ed. June 12, 1996); demonstrating intent that statute contain standard and scope of review "which both recognizes the deference to the contracting agency in conducting procurements and also limits expensive, time consuming and resource-intensive discovery.").

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss this action pursuant to Rule 12(b)(1).

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ BRYANT G. SNEE
Deputy Director

s/ STEPHEN C. TOSINI
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-5196
Fax: (202) 514-7969
Attorneys for Defendant

OF COUNSEL:
DON W. CROCKETT
Office of the General Counsel
Department of Energy
Washington, D.C.

January 7, 2008

**CERTIFICATE OF FILING**

I hereby certify that on January 7, 2008, a copy of the foregoing "REPLY IN SUPPORT FO DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Stephen C. Tosini