**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| FFTF RESTORATION COMPANY, LLC<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant | ) | No. 07-659 C<br><br>Judge Firestone |

**FIRST AMENDED COMPLAINT**

Pursuant to Rule 15(a) of the Rules of the United States Court of Federal Claims and pursuant to the oral motion made on February 13, 2008, Plaintiff, FFTF Restoration Company, LLC, hereby submits its First Amended Complaint against Defendant, the United States of America.

**I. Nature of the Action**

1. This complaint seeks monetary damages resulting from the U.S. Government's violation of: its mandatory regulations to "[c]onduct business with integrity, fairness, and openness" (FAR 1.102(b)(3); *see also* FAR 1.102-2(c)); its mandatory regulations to set aside procurements for exclusive participation of small business concerns (FAR 19.502-2); and its breach of its implied-in-fact contract to consider proposals fairly and honestly in the conduct of federal procurements.

## II. Parties

2. Plaintiff is FFTF Restoration Company, LLC ("PRC"), with its principal place of business in Richland, Washington.

3. Defendant is the United States, acting through the Department of Energy (the "Government" or "DOE").

## III. Jurisdiction

4. The Court of Federal Claims has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491. The Court of Federal Claims has jurisdiction "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract of any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C.§ 1491(b)(1). The Court of Federal Claims also has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress…or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).

## IV. Venue

5. Venue is proper in the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491.

## V. Background

6. On April 18, 2003, DOE issued an Expression of Interest Notice as the first step in the procurement process for the deactivation and decommissioning of the Fast Flux Test Facility in Washington ("FFTF"). For the Plaintiff, this initial step included attendance at a small business conference on July 14-16, 2003, one-on-one

meetings with DOE, a site tour, questions and responses, and commenting on a draft Request for Proposals. Plaintiff also established a team from June 2003 through November 2003, hired key personnel, and assigned other personnel to begin work on this procurement. Plaintiff invested 8 months and an estimated total of 1,307 person hours at an estimated cost of $216,384 in preparing for the announced procurement.

7. On December 11, 2003, the United States, through the DOE, issued Solicitation Number DE-RP06-04RL 14600 (the "Solicitation"), as a mandatory small business set-aside procurement for deactivation and decommissioning of the Fast Flux Test Facility in Washington.

8. The Solicitation was issued after DOE determined that qualified small businesses or consortiums of small businesses were capable of performing a majority of the work, based on responses to a notice issued by DOE on or about April 18, 2003 and that there was, therefore, a reasonable expectation that that offers would "be obtained from at least two responsible small business concerns…and award [would] be made at fair market prices" thereby requiring the Solicitation to be set aside for exclusive small business participation. FAR 19.502-2(b).

9. The Solicitation called for the deactivation and environmental restoration of the FFTF, a 400 megawatt liquid metal cooled test reactor located on the Hanford Site near Richland, Washington. The Solicitation permitted substantial subcontracting to large businesses provided not less than 51% of the total work was performed by small businesses. Acceptable business arrangements to perform the work included: a single small business performing a majority of the work on its own as a prime contractor; an affiliation or team of small businesses performing the entire or majority portion of the

work as a prime contractor; or a single or affiliation or team of small businesses joined with a large business entity (or entities) to perform the work. The acquisition was classified under North American Industry Classification System ("NAICS") Code 562910, Environmental Remediation Services, with a small business size standard of 500 employees. According to the Solicitation, the FFTF Closure Project involved facility deactivation, sodium disposition, and facility decommissioning; however, only the deactivation and sodium disposition activities were to be authorized under an initial contract, pending completion of an Environmental Impact Statement and Record of Decision on the decommissioning phase. Facility deactivation was to include the removal of 169 irradiated fuel components stored in sodium filled fuel storage vessels at the FFTF, and packaging the components for approved storage. An additional 18 interim storage casks containing irradiated fuel were to be relocated to alternate storage on the Hanford Site. Deactivation also was to involve the removal of approximately 260,000 gallons of liquid metal (mostly sodium) from the FFTF reactor systems, the two fuel storage vessels, and their auxiliary systems. The FFTF plant, associated support buildings, and associated operating systems and equipment were then to be prepared for decommissioning. Activities associated with sodium disposition included developing an environmentally compliant approach to the disposition of 260,000 gallons of bulk sodium. The contractor was to have the option of transferring the bulk sodium to the "Sodium Processing Facility" at the DOE's Idaho National Laboratory, near Idaho Falls, Idaho, for conversion to sodium hydroxide and subsequent return and use of the converted material by the DOE Office of River Protection in the treatment of high-level tank waste at Hanford. The residual sodium was also to be removed from the plant

systems and appropriately dispositioned. The estimated value of the procurement pursuant to an initial Government estimate was more than $500 million.

10. The decision to set aside the procurement for small businesses was consistent with DOE's own internal policies and guidance directing "procurement officials to contract with small businesses unless specific and limited circumstances prevent doing so." GAO-06-501, "Improved Program Management Could Help Achieve Small Business Goal," April, 2006, p. 2. The cited GAO report explored the reasons DOE was unable to meet its small business contracting goals in four of the last five years.

11. Plaintiff submitted an initial, compliant offer in response to the Solicitation on February 17, 2004. Plaintiff's initial offer consisted of about 350 pages .

12. From February 20, 2004 through March 22, 2004, DOE (through the Defense Contract Audit Agency or "DCAA") conducted an extensive audit of the financial aspects of Plaintiff's proposal. During the week of March 6, 2004, oral presentations, questions, and interviews were conducted between Plaintiff and DOE.

13. On May 28, 2004, DOE initiated discussions and negotiations with Plaintiff concerning Plaintiff's proposal.

14. On June 25, 2004, Plaintiff submitted a Final Proposal Revision ("FPR") as requested by DOE. Subsequently, DOE and DCAA conducted another extensive audit of the financial aspects of Plaintiff's proposal from July 7, 2004 through July 21, 2004. In total, Plaintiff invested an estimated 17,742 person hours and $2,524,398 in preparing in initial proposal, presenting, revising, responding to questions, negotiating, and preparing its final proposal revision.

15. On September 27, 2004, award was made to SEC Closure Alliance, LLC in the amount of $237 million.

16. On September 30, 2004, DOE held debriefings for the unsuccessful offerors, including Plaintiff.

17. On October 15, 2004, Plaintiff filed a protest of the award at the Government Accountability Office ("GAO"). GAO sustained the protest on January 12, 2005.

18. In January, 2005, the United States Environmental Protection Agency ("EPA") and the Washington Department of Ecology requested deferment of the FFTF contract for higher priority clean-up jobs at Hanford.

19. On March 18, 2005, DOE notified Plaintiff, as well as the other offerors that DOE had determined to be qualified to participate in the procurement, that an amended Request For Proposals would be issued in April, 2005.

20. On March 29, 2005, the DOE Inspector General (DOE-IG) issued a "Special Report on 'Fast Flux Test Reactor: Re-evaluation of the Department's Approach to Deactivation, Decontamination, and Decommissioning'" (DOE/IG 0683, March 2005) which recommended that DOE reevaluate its closure and cleanup plan for FFTF, citing concerns that included the facility's uncertain end state, whether the project was a high-priority project at the Hanford site, and the lack of experienced staff to oversee contractor work.

21. Between the date of the debriefing on the initial contract award and April 28, 2005, Plaintiff invested an estimated additional 2,453 person hours and $719,935 protesting DOE's award and then reforming the team to participate in another round of

this procurement. Of this amount, DOE reimbursed FRC $224,116 for some of the costs of the successful protest.

22. On April 29, 2005, DOE issued the FFTF amended Solicitation ("Amended Solicitation"). Responses to the Amended Solicitation were due to DOE by May 31, 2005, which was later extended by DOE to June 6, 2005. Under the Amended Solicitation, revised offers were to address two phases of work: deactivation to be conducted in the first phase, and decommissioning and demolition to be conducted in the second phase in the event that DOE determined, by December 31, 2006, to proceed with that phase. The work in the Amended Solicitation amounted to an estimated 16 % reduction in the scope of work (based on the reduction in the DOE baseline costs).

23. On June 6, 2005, Plaintiff timely submitted its proposal in response to the Amended Solicitation.

24. During the week of June 13, 2005, DOE held oral presentations and interviews with Plaintiff's Key Personnel.

25. On August 25, 2005, DOE further amended the Amended Solicitation and issued discussion questions to Plaintiff. Plaintiff timely responded to the questions on September 12, 2005.

26. Between September 19 and October 7, 2005, numerous additional questions and answers were exchanged between DOE and Plaintiff.

27. On November 14, 2005, DOE notified the Plaintiff and other offerors that additional Final Proposal Revisions would be requested around December 1, 2005, and due on December 9, 2005. DOE did not, however, request the Final Proposal Revisions.

28. DOE cancelled the Amended Solicitation on December 22, 2005. Plaintiff requested a debriefing but DOE denied the request.

29. From the date of issuance of the Amended Solicitation to the date of final cancellation, Plaintiff invested an estimated 6,287 person hours and $836,772 in preparing a substantially revised response to the Amended Solicitation and participating in interviews and responses to questions.

30. Since December 22, 2005, DOE has authorized deactivation activities at the FFTF that were included in the original Solicitation and Amended Solicitation's statement of work. DOE authorized the deactivation under an existing contract with a large business which performs environmental restoration and waste management services at the DOE's Hanford site. DOE's December 22, 2005, announcement of its cancellation of the Amended Solicitation stated plans to "focus on completing the key risk reduction activities at FFTF over the next year and placing the facility in a long-term low-cost surveillance and maintenance mode – freeing up critical funding to invest in higher-priority work at Hanford in the years ahead." DOE's announcement also stated:

> The first project phase, deactivation, which is currently underway, consists of cleaning and removing fuel, draining liquid sodium from the facility's coolant and storage systems, and shutting down all remaining systems. During the initial competition, bid protest, and second competition, deactivation work has been continuing under incumbent contractor Fluor Hanford. Only a limited amount of fuel remains to be offloaded and just one major sodium tank remains to be drained. DOE anticipates the remaining deactivation activities will be complete within a year, allowing the facility to transition to long-term, low-cost surveillance and maintenance mode.
>
> The final project phase, decommissioning, would take the facility down to its final end state, such as cocooning or demolishing the entire structure to slab-on-grade.

> This phase is being deferred with today's decision until the higher priority cleanup issues are adequately addressed and the end state is defined through a future Environmental Impact Statement and Record of Decision.

(*DOE News Release,* RL-652, December 22, 2005)

31. Despite being reviewed by the GAO for failing to meet its own goals for small business participation in four of the last five years (See, GAO-06-501, "Improved Program Management Could Help Achieve Small Business Goal," April, 2006, p. 14), DOE continues to permit a large business to perform the work that was the subject of the Solicitation and which was solicited as a small business set-aside as required by the federal procurement regulations. The small business procurement policy of the DOE is stated in DOE Acquisition Letter 2005-08, dated June 10, 2005 and is consistent with the mandatory requirements of FAR 19.502-2(b):

> The Contracting Officer shall set aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns offering products of different small business concerns and (2) award will be made at fair market prices.

(*DOE Acquisition Letter 2005-08,* June 10, 2005, p. 4).

By permitting the incumbent large business to continue performance when more than two small businesses made offers at prices below DOE's estimate, DOE remains in violation of its internal small business acquisition policies as expressed in the Acquisition Letter and in violation of FAR 19.502-2(b).

32. Although DOE canceled the Solicitation on the grounds that higher priority projects took precedence over the FFTF deactivation and decommissioning, DOE continues to request and allocate appropriations for the project. The FFTF deactivation and decommissioning project was budgeted for:

FY 2003: $35.8 million;
FY 2004: $43.6 million;
FY 2005: $45.7 million;
FY 2006: $45.6 million.

(FY 2003 and 2004 dollar figures from *Department of Energy FY 2005 Congressional Budget Request*, DOE/ME-0036, Vol. 5, p. 419 ; FY 2005 and 2006 dollar figures from *Department of Energy FY 2007 Congressional Budget Request,* DOE/CF-006, Vol. 5, p. 19, February 2006).

The DOE's FY 2007 budget request, issued in February, 2006 (after the Solicitation was canceled), included a request for $34.8 million for FFTF deactivation, which will be used to fund the continued work by the incumbent large business. The February 2006 budget request stated, "In December 2005, DOE decided to complete deactivation by early FY 2007, not to proceed to decontamination, and to transfer the facility to a long-term surveillance and maintenance mode." The budget request further described the progress of the current deactivation (work performed during the small business set-aside procurement) by the incumbent:

> At the end of FY 2005, the sodium has been drained from the primary and secondary heat transport loops, intermediate heat exchangers, reactor vessels, and the Sodium Storage Facility vessel. Sodium-potassium was flushed from the in-containment cooling loops and sodium-potassium was drained from the Fuel Storage Facility cooling loop. The sodium drained and transferred to the Sodium Storage Facility constitutes 91 percent of the 260,000 gallons of sodium inventory. Of the original 376 fuel assemblies, 347 fuel assemblies (92 percent) will have been washed, dried, and loaded into above ground Interim Storage Casks. Interim Storage Casks loaded with fuel assemblies were shipped to either the Plutonium Finishing Plant, 400 Area Interim Storage Area or the 200 Area Interim Storage Area.

(*Department of Energy FY 2007 Congressional Budget Request,* DOE/CF-006, Vol. 5, p. 262, February 2006)

The large business incumbent continues to perform deactivation work for DOE, work that could be performed by small businesses in accordance with mandatory federal procurement regulations and DOE's own internal guidance.

33. On June 25, 2007, DOE issued an unrestricted, cost plus award fee solicitation for activities at the Central Plateau at the DOE Hanford Site. Included in that solicitation is work that was included in the Solicitation and Amended Solicitation that was cancelled by DOE on December 22, 2005. In particular, the new solicitation includes as part of its statement of work the following:

**C.2.6 Fast Flux Test Facility**

Background:

The Fast Flux Test Facility (FFTF) was a 400-MWt sodium-cooled reactor plant designed for testing nuclear reactor fuels and materials.

**C.2.6.1 Maintain Safe and Compliant FFTF Complex**

General Scope:

The Contractor shall maintain worker/public health and safety in accordance with the authorization agreement and applicable regulations.

Detailed Scope and Requirements:

The Contractor shall maintain the FFTF Project facilities in a safe, compliant, and energy-efficient condition during the long term surveillance and maintenance (S&M) period, and while deactivation activities are being performed. The Contractor shall perform facility and plant system S&M in compliance with all applicable safety and regulatory requirements. The Section J Attachment entitled, *Hanford Site Structures List*, identifies the FFTF Project facilities that the Contractor is responsible for maintaining in a safe and compliant condition.

**C.2.6.2 FFTF Shutdown Activities**

General Scope:

The Contractor shall deactivate identified FFTF plant systems and components and remove potential hazards to place the facility in a minimum-safe surveillance and maintenance mode.

Detailed Scope and Requirements:

The Contractor shall systematically shutdown identified systems, components and facilities to achieve deactivation of FFTF and support facilities. The Contractor

> shall de-energize systems and drain all system fluids to the maximum extent practicable.
>
> The Contractor shall remove remaining polychlorinated biphenyl (PCB) transformers.
>
> The systems that will remain to be deactivated at the time of Contract Transition are provided in Section J Attachment entitled, *Supplemental Work Description Tables.* The systems that are to remain operable/partially operable during the S&M period are provided in Section J Attachment entitled, *Supplemental Work Description Tables*.

See, https://e-center.doe.gov/iips/busopor.nsf/UNID/97F708A59E5369E485257229007AD476/$file/PRC_Section_C.doc#_Toc170288631 (last visited Feb. 19, 2008).

## VI. Causes of Action

### 1. Breach of Mandatory Requirement to Conduct Business With Integrity, Fairness, And Openness

34. Plaintiff incorporates by reference the allegations in paragraphs 1 through 33 above.

35. Plaintiff has standing in this matter as it is a responsible small business offeror and submitted a compliant proposal in response to the Solicitation and Amended Solicitation.

36. Defendant, as an executive branch agency spending appropriated funds, is subject to the Federal Acquisition System and the Federal Acquisition Regulation.

37. As part of its obligations under the Federal Acquisition System, Defendant, operating through its duly authorized procurement officials and contracting officers, is required to "[c]onduct business with integrity, fairness, and openness" (FAR 1.102(b)(3)) which requires "open communication among team members, internal and external customers, and the public." (FAR 1.102-2(c)(1).

38. Defendant failed in its duty when it failed to consider Plaintiff's proposal fairly and honestly and not in an arbitrary and capricious manner during consideration of Plaintiff's proposal in response to the Solicitation.

39. Defendant failed again in its duty when it failed to consider Plaintiff's proposal fairly and honestly and not in an arbitrary and capricious manner in response to the Amended Solicitation and chose instead not to disclose to Plaintiff its real intent of cancelling the Amended Solicitation while continuing to have the work performed by a large business contractor.

40. Plaintiff invested a substantial amount of money, time and effort to submit its proposals and related information to DOE. These resources have all been wasted because of Defendant's breach of its duty of conducting business with integrity, fairness, and openness.

41. Plaintiff spent a total of 27,789 person hours and $4,073,373 in preparing for the procurement, submitting an initial proposal, participating in a protest, submitting a revised proposal, and participating in numerous required procurement activities. Plaintiff is entitled to these costs as damages from the government resulting from the breach of its duty of conducting business with integrity, fairness, and openness.

**2. Breach of Mandatory Requirement to Set Aside Contracts For Exclusive Participation By Small Business Concerns.**

42. Plaintiff incorporates by reference the allegations in paragraphs 1 through 41 above.

43. Plaintiff has standing in this matter as it is a responsible small business offeror and submitted a compliant proposal in response to the Solicitation and Amended Solicitation.

44. Defendant, as an executive branch agency spending appropriated funds, is subject to the Federal Acquisition System and the Federal Acquisition Regulation.

45. As part of its obligations under the Federal Acquisition Regulation, Defendant is required to set aside acquisitions for exclusive participation by small business concerns when the Defendant has a reasonable expectation that two or more responsible small business concerns will submit offers and award can be made a fair market price. FAR 19.50202(b).

46. Defendant initially properly made the determination to set aside the work called for in the Solicitation and Amended Solicitation.

47. At some undisclosed point in time, Defendant, without a rational basis and contrary to regulatory requirements, unreasonably decided to cancel the Amended Solicitation and have the work performed by a large business contractor.

48. Plaintiff invested a substantial amount of money, time and effort to submit its proposals and related information to DOE. These resources have all been wasted because of Defendant's violation of procurement regulations and the associated statutory requirements with regard to setting aside acquisitions for exclusive participation by small business concerns.

49. Plaintiff spent a total of 27,789 person hours and $4,073,373 in preparing for the procurement, submitting an initial proposal, participating in a protest, submitting a revised proposal, and participating in numerous required procurement activities. Plaintiff is entitled to these costs as damages from the government resulting from the violation of procurement regulations and the associated statutory requirements with regard to setting aside acquisitions for exclusive participation by small business concerns.

**3. Breach of Implied-In-Fact Contract**

50. Plaintiff incorporates by reference the allegations in paragraphs 1 through 49 above.

51. Plaintiff has standing in this matter as it is a responsible small business offeror and submitted a compliant proposal in response to the Solicitation and Amended Solicitation.

52. Defendant, when its duly authorized officials, issued a formal, written Request for Proposals, impliedly promised that it would consider all proposals received in a fair and honest manner.

53. In consideration of Defendant's promise, Plaintiff submitted compliant proposals in response to the Solicitation and Amended Solicitation.

54. DOE breached its implied-in-fact contract with Plaintiff when at the same time it was encouraging Plaintiff to submit compliant proposals and revised proposals and actively participate in the solicitation process, it was making the determination, without any notice to Plaintiff, to cancel the Solicitation and Amended Solicitation and to have the work performed by a large business contractor.

55. Plaintiff spent a total of 27,789 person hours and $4,073,373 in preparing for the procurement, submitting an initial proposal, participating in a protest, submitting a revised proposal, and participating in numerous required procurement activities. Plaintiff is entitled to these costs as damages from the government resulting from the breach of its implied-in-fact contract to consider submitted proposals fairly and honestly when it failed to notify Plaintiff of its intention to cancel the Solicitation and Amended Solicitation and

have the work performed by a large business contractor while at the same time it was encouraging Plaintiff to participate in the solicitation process.

## VII. Damages

56. Plaintiff suffered total damages in the amount of $4,073,373 due to the Government's violation of procurement statutes, regulations and its implied-in-fact contract that includes employee time, labor, material, and expert time involved in pursuing the Solicitation and Amended Solicitation.

## VIII. Prayer for Relief

WHEREFORE, Plaintiff prays for relief as follows:

1. Judgment against the United States in a total amount of $4,073,373.

2. Attorneys fees in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412.

3. Other monetary and injunctive relief the Court determines is appropriate.

Respectfully submitted,

s/William A. Shook
William A. Shook
Kirkpatrick & Lockhart
Preston Gates Ellis LLP
1601 K Street NW
Washington, DC 20006
Tel: (202) 661-6256
Fax: (202) 778-9100
Email: bill.shook@klgates.com

Date: February 19, 2008