IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FFTF RESTORATION COMPANY, LLC | ) | |
| Plaintiff | ) | No. 07-659 C |
| v. | ) | |
| | ) | Judge Firestone |
| THE UNITED STATES, | ) | |
| Defendant | ) | |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

**TABLE OF CONTENTS**

I. Summary Of The Case ........................................................................................ 1

II. Standard of Review ............................................................................................ 3

III. The Facts As Currently Known ............................................................................ 5

IV. Documents Requested To Supplement The Administrative Record ........................ 9

V. Conclusion ........................................................................................................ 10

# TABLE OF AUTHORITIES

## CASE LAW

*Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States*,
56 Fed. Cl. 502 (2003) ....................3, 4

*Beta Analytics International, Inc. v. United States*,
61 Fed. Cl. 223 (2004) ....................5

*Comprehensive Health Services, Inc. v. United States*,
70 Fed. Cl. 700 (2006) ....................4

*Cubic Applications, Inc. v. United States*,
37 Fed. Cl. 345 (1997) ....................3

*Emerald Coast Finest Produce Co. v. United States*,
76 Fed. Cl. 445 (2007) ....................3

*GraphicData L.L.C. v. United States*,
37 Fed. Cl. 771 (1997) .................... 3-4

*International Resource Recovery, Inc. v. United States*,
61 Fed. Cl. 38 (2004) ....................5

*Orion Int'l Tech. v. United States*,
60 Fed. Cl. 338 (2004) ....................3, 4

*Precision Standard, Inc. v. United States*,
69 Fed. Cl. 738 (2006) ....................4

*Rig Masters, Inc. v. United States*,
70 Fed. Cl. 413 (2006) ....................4, 9

*Tech Sys., Inc. v. United States*,
50 Fed. Cl. 216 (2001) ....................3

## STATUTES AND REGULATIONS

28 U.S.C. § 1491(b)(1) ....................3

FAR 19.502....................1, 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FFTF RESTORATION COMPANY, LLC<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant | ) | No. 07-659 C<br><br>Judge Firestone |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Plaintiff, FFTF Restoration Company, LLC ("FRC") respectfully submits this memorandum in support of its motion to supplement the administrative record.

**I. Summary Of The Case**

As presented in the First Amended Complaint, FRC alleges three causes of action:

1. The failure by the Department of Energy ("DOE") of its regulatory obligation to conduct business with integrity, fairness, and openness. The failure occurred when DOE failed to properly consider FRC's first proposal and again when DOE chose not to timely disclose to FRC its real intent to cancel the solicitation while at the same time making the cancellation decision in an arbitrary and capricious manner.

2. The failure by DOE to award the work described in the solicitation to a small business concern as required by FAR 19.502 but rather had the work and is having the work performed by a large business contractor—having expended at least $116,566,000

since the decision to cancel the solicitation was made—an amount that would have more than allowed plaintiff to recover its investment in pursuing the solicitation.

3. The breach by DOE of an implied-in-fact contract with FRC to consider FRC's proposal honestly and fairly. The breach occurred when DOE failed to properly consider FRC's first proposal and again when DOE chose not to timely disclose to FRC its real intent to cancel the solicitation while at the same time making the cancellation decision in an arbitrary and capricious manner.

In response to these three causes of action, defendant has submitted an Administrative Record ("AR") that consists of 4 documents and 17 pages. The first document is a December 16, 2005 memorandum from the Source Selection Authority that is entitled "ACTION: Concur in the cancellation of the Fast Flux Test Facility (FFTF) Closure Project solicitation, get the facility to a lower risk stats, and put the facility in a long-term and low-cost surveillance and maintenance mode" (hereinafter "SSA Memorandum"). AR 1-7. The second document is a "Meeting Agenda" of a November 29, 2005 meeting concerning the "FFTF Acquisition Path Forward." AR 8-15. The third document is a one page memorandum from the DOE contracting officer documenting his decision to cancel the solicitation. AR 16. The fourth document is the one page letter sent on December 22, 2005 to FRC with the notice of the cancellation of the solicitation. AR 17.

Ultimately, in order for this Court to resolve the issues raised in the First Amended Complaint, the Court must have before it evidence of what did the government know and when did they know it.

## II. Standard of Review

To the extent that this Court's jurisdiction is based on its jurisdiction over bid protests, 28 U.S.C. § 1491(b)(1), it is generally the case that the "the court focuses its review on 'the administrative record already in existence.'" *Emerald Coast Finest Produce Co. v. United States*, 76 Fed. Cl. 445, 448 (2007) (*quoting Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States*, 56 Fed. Cl. 502, 508 (2003)). The "record produced during a formal adjudication or rulemaking . . . is different from a record of an informal agency decision," such as a bid protest. *Orion Int'l Tech. v. United States*, 60 Fed. Cl. 338, 342 (2004). "In the case of an informal administrative decision, such as the award of a contract, the administrative record is merely a 'convenient vehicle for bringing the decision of an administrative body before a reviewing agency or a court.'" *Id.* (*quoting Tech Sys., Inc. v. United States*, 50 Fed. Cl. 216, 222 (2001)). In fact, this Court has provided that:

> As a practical matter, . . . in most bid protests, the "administrative record" is something of a fiction, and certainly cannot be viewed as rigidly as if the agency had made an adjudicative decision on a formal record that is then certified for court review. This is true in the contract award context if for no other reason than that, due to the absence of a formal record, the agency has to exercise some judgment in furnishing the court with the relevant documents. In order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence, and possibly limited discovery.

*Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 350 (1997).

"Accordingly, the Court of Federal Claims does not 'apply an iron-clad rule automatically limiting its review to the administrative record.'" *Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States*, 56 Fed. Cl. 502, 508 (2003) (citation omitted); *GraphicData L.L.C. v. United States*, 37 Fed.

Cl. 771, 780 (1997) (stating that "a judge confronted with a bid protest case should not view the administrative record as a[n] immutable boundary that defines the scope of the case.").

"Although neither the United States Supreme Court nor the United States Court of Appeals for the Federal Circuit have established a standard for supplementing the administrative record, decisions of the United States Court of Federal Claims have identified the threshold inquiry as whether an agency's action before the court is susceptible to a 'record review.'" *Comprehensive Health Services, Inc. v. United States*, 70 Fed. Cl. 700, 720 (2006) (citations omitted). "If the answer is yes, the judge must limit review to the record." *Al Ghanim*, 56 Fed. Cl. at 508. On the other hand, "[i]f the answer is no, a party may supplement the administrative record when necessary to prove that evidence not in the record is evidence without which the court cannot fully understand the issues." *Id.*

This Court has further refined its willingness to supplement the administrative record for two principal purposes:

> [T]o assist the court in understanding an agency decision when the record has not adequately explained it, and to place in the record material that, by its very nature, would not be contained in it, such as evidence of bias or bad faith."

*Rig Masters, Inc. v. United States*, 70 Fed. Cl. 413, 424 (2006). The latter principle has also included "information relied upon but omitted from the paper record, or the content of conversations," *Orion Int'l Techs*, 60 Fed. Cl. at 343-44 (footnotes and citations omitted), as well as information to "fill gaps concerning the factors the contracting officer considered in reaching his decision." *Precision Standard, Inc. v. United States*, 69 Fed. Cl. 738, 745 (2006).

With regard to bias or bad faith, this Court has "recognized [that] '[such] issues [in bid protests] are not amenable to record review.'" *International Resource Recovery, Inc. v. United States*, 61 Fed. Cl. 38, 41 (2004). "Allegations of bias, prejudice and bad faith, . . . which depend upon a Government official's past conduct toward a bidder necessarily cannot be subsumed within the record of a challenged award decision." *Id.* Indeed, it would be a rare occasion "when evidence of bad faith will be placed in an administrative record, and to insist on this – and thus restrict discovery regarding bad faith to cases involving officials who are both sinister *and* stupid – makes little sense." *Beta Analytics International, Inc. v. United States*, 61 Fed. Cl. 223, 226 (2004) (citation omitted) (emphasis in original).

FRC respectfully seeks to supplement the AR on these principles.

**III. The Facts As Currently Known**

1. Sometime prior to April 18, 2003, the date DOE issued its public Expression of Interest Notice, DOE had considered and made the determination that FAR 19.502 required DOE to set aside the solicitation for the deactivation and decommissioning ("D&D") of the Fast Flux Test Facility because there was a reasonable expectation that two or more responsible small business concerns would submit offers and that award could be made at a fair market price. This is evidenced by the public statements made by DOE officials subsequent to that notice and by the fact that the December 11, 2003 solicitation was, in fact set aside for exclusive small business participation. It is also evidenced by the statement in the SSO's Memorandum that "[i]n 2003, a strategy was developed to implement the entire FFTF Closure Project through a small business set aside acquisition." AR 3.

2. The DOE Source Selection Official stated in his December 16, 2005 that "[d]uring recent weeks, the Administration has made decisions that result in significantly reduced funding for Environmental Management (EM) projects." AR 1. We do not know when the Source Selection Official actually learned that there would be a budget reduction. We do know, however, that the FY 2005 budget for the "Fast Flux Test Reactor Facility D&D" was $45,715,000, meaning that assuming a regular expenditure rate, on December 16, 2005, the date of the Source Selection Official's memorandum, there was $36,071,000 yet to be spent in FY 2005.[1] Exhibit 1. We also know that the FY 2006 budget for the project was $45,652,000, the FY 2007 budget was $34,843,000, the FY 2008 budget is $10,248,000 and the FY 2009 budget request is $10,755,000 meaning that since the date of the Source Selection Official's memorandum, DOE has spent or will spend a total of $137,569,000 of the FFTF effort, presumably all of it paid to a large business concern. Exhibits 1 and 2.

3. DOE's estimated cost for the FFTF effort was $350,000,000 while the first contract that was awarded to a small business was for $235,000,000. AR 3. While there is no evidence in the current record as to how DOE arrived at its $350,000,000 estimated cost, it is reasonable to assume that it was based, at least in part on the costs being paid to the incumbent large business contractor. The fact that a small business concern was awarded the contract and what was determined by the contracting officer to be a "fair and reasonable price" at two-thirds the government estimate is strong evidence of the fact that small business concerns could do the work at more than a fair market price—the standard for a required small business set-aside.

---

[1] The SSO's Memorandum states that the large business contractor, Fluor Corporation, was, in fact spending this amount per month--$3.8 million. AR 3.

4. We know that, as stated in the Source Selection Official's memorandum, that "federal, state and local stakeholders have urged DOE to devote the limited funds available for environmental work at Hanford to projects which are seen to pose higher environmental hazards than FFTF." AR 1. However, we also know that that "urging" was made in January 2005, well prior to DOE's April 2005 decision to release a revised solicitation to the small business concerns in the competitive range so as to request revised proposals and to engage in additional discussions and negotiations. AR 3.

5. The SSO stated in the SSO Memorandum that "in the later part of October, the procurement officials first learned that the FFTF EIS likely would be integrated with a more comprehensive EIS for the cumulative impacts of groundwater and other environmental conditions at Hanford." AR 4. We do not have any documents that discuss this "event" nor documents with regard to the actual impact on the terms of the solicitation or the offerors.

6. The SSO stated in the SSO Memorandum "[w]ith the most recent known delays in this acquisition, the residual work scope (CLIN 1) and period of performance is likely to be so small as not be cost effective, either for the awardee or the Government." AR 2. As noted above, we know that DOE has spent $116,566,000 on this effort since that statement was made and has budgeted and additional $10,755,000 in expenditures for FY 2009. We do not have any documents in the record that would support the conclusion that it would not be cost effective for the "awardee or the government." The proposals submitted, however, would indicate a highly cost-effective approach by small business concerns as well as the prior evidence that someone must have made that award could be made at a fair market price.

7. The SSO consulted with the Richland Operations Office, the Office of General Counsel, and the Office of Procurement and Assistance Management prior to issuing his December 16, 2005 memorandum. AR 2. The only record of a meeting prior to December 16, 2005 is the “Meeting Agenda” at AR 8-15. We do not have any records or documents of other meetings or discussions prior to that meeting.

8. A basis for the SSO’s decision to recommend cancellation of the solicitation was a concern about the delay in the issuance of an Environmental Impact Statement, but the current record is devoid as to the real impact that delay would have on the award of the contract to small business concerns or the impact on DOE.

9. The existing large business concern incumbent contractor has continued to perform the very services contemplated by the solicitation—services that DOE has previously determined to be capable of being performed by at least two small business concerns at a fair market price. AR 5.

10. Notwithstanding the expressed concerned about the small budget and the delay in the exercise of CLIN 2 (AR 4-5), the solicitation notified all offerors that the work was subject to the availability of appropriations. However, the record does not even contain the solicitation at this point in time.

11. The SSO stated that he “considered the costs expended by the small businesses that have participated in this procurement” (AR 6) but there is no documentation in the record as to what was or the amounts actually considered.

12. The DOE Inspector General issued a report on the FFTF in March 2005 which recommended that DOE evaluate its closure and cleanup plan. Exhibit 3. Notwithstanding that report, DOE issued a revised solicitation on April 29, 2005 that

encouraged FRC to continue to expend resources by submitting a revised proposal and entering into extensive and expensive discussions with DOE. We do not have any documents of what was done with that report after it was issued and when.

13. On June 25, 2007, DOE issued an unrestricted, cost plus award fee solicitation for activities at the Central Plateau at the DOE Hanford Site that includes work that was described in the Solicitation and Amended Solicitation that were cancelled.

## IV. Documents Requested To Supplement The Administrative Record

Supplementation of the record is required so that the Court is apprised of the actual complete set of facts and operation of regulations and laws that are pertinent to the DOE decision to cancel the solicitation in December 2005 while having encouraged FRC to continue to expend resources to pursue the work while at the same time having the work performed by a large business concern. *Rig Masters, Inc. v. United States*, 70 Fed. Cl. 413, 424 (2006) (supplementation required where the record has not adequately explained the agency decision).

The documents requested include:

1. The solicitation and all amendments thereto.

2. All documents that are related to or discuss the decision to set aside the solicitation for exclusive participation by small business concerns.

3. All documents that are related to or discuss the budget for the FFTF D&D for FY 2005 through the present including but not limited to documents seen or discussed by the SSO and contracting officer.

4. All documents that are related to or discuss the work performed by the large business concern involving work described in the solicitation including but not limited to

the contract between the large business concern and DOE and all solicitation-related amendments thereto.

5. All documents that are related to or discuss the position taken by federal, state, and local stakeholders with regard to the FFTF D&D received by DOE after the issuance of the solicitation.

6. All documents that are related to or discuss the FFTF Environmental Impact Statement.

7. All documents that are related to or discuss the scope of work of the FFTF D&D including but not limited to the estimated cost of that work.

8. All documents that are related to or discuss the decision to cancel the solicitation.

9. All documents that are related to or discuss the March 2005 Inspector General report on the FFTF.

10. All documents that are related to or discuss that portion of the June 25, 2007 DOE solicitation related to FFTF D&D.

11. All documents that are related to or discuss the effort required by DOE of FRC after April 25, 2005 to continue to actively seek award of a contract pursuant to the solicitation.

## V. Conclusion

The current administrative record fails to adequately explain the rationale, timing, and basis for the solicitation cancellation decision as well as the decision to have the work performed by a large business concern rather than a small business concern. Considering the foregoing, FRC respectfully requests this Court require defendant to supplement the Administrative Record with all requested documents.

Respectfully submitted,

/s/ William A. Shook

William A. Shook
Kirkpatrick & Lockhart
Preston Gates Ellis LLP
1601 K Street NW
Washington, D.C. 20006
Tel: (202) 661-6256
Fax: (202) 778-9001
Email: bill.shook@klgates.com

Date: March 21, 2008