IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FFTF RESTORATION COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-659C |
| v. | ) | (Judge Firestone) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS AND FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

JEFFREY S. BUCHOLTZ
Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRYANT G. SNEE
Deputy Director

STEPHEN C. TOSINI
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-5196
Fax: (202) 514-7969
Attorneys for Defendant

OF COUNSEL:
DON W. CROCKETT
Office of the General Counsel
Department of Energy
Washington, D.C.

April 16, 2008

# TABLE OF CONTENTS


BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Factual Background Pursuant To Rule 52.1. . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. The Amended Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A. Standard For Rule 12(b)(1) Motion to Dismiss. . . . . . . . . . . . . . . . . . . 8

B. Standard And Scope Of Review For Procurement Challenges. . . . . . 9

II. FRC Has Not Established Jurisdiction Over Counts I And II Because The Cited FAR Provisions Are Not Mandatory Or Relevant. . . . . . . . . . . . . . . 10

A. The Court Lacks Jurisdiction To Entertain Count I Because FRC Claims Only That DOE Violated A Guideline, And Not Any Mandatory Statute Or Regulation.. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

B. The Court Lacks Jurisdiction To Entertain Count II. . . . . . . . . . . . . 15

III. The Court Lacks Jurisdiction Over Count III Because Section 1491(b)(1) Superseded Any "Implied In Fact" Contract With Respect To Bid Protests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A. Count III Identifies No Waiver Of Sovereign Immunity. . . . . . . . . . 16

B. The Court's ADRA Precedent Merits Dismissal. . . . . . . . . . . . . . . . 17

IV. The Cancellation Was In Accordance With Law. . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## CASES

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998). . . . . . . . . . 8

Am-Pro Protective Agency v. United States,
281 F.3d 1234 (Fed. Cir. 2002). . . . . . . . . . 22

At&T v. United States,
307 F.3d 1374 (Fed. Cir. 2002) . . . . . . . . . . 13

Babbitt v. Sweet Home Chapter of Communities for a Great Oregon,
515 U.S. 687, 724. . . . . . . . . . 19

Bannum, Inc. v. United States,
404 F.3d 1346 (Fed. Cir. 2005). . . . . . . . . . 10

Block v. United States,
66 Fed. Cl. 68 (2005). . . . . . . . . . passim

Blue & Gold Fleet, L.P. v. United States,
492 F.3d 1308 (Fed. Cir. 2007). . . . . . . . . . 15

Briscoe v. LaHue,
663 F.2d 713 (7th Cir. 1981). . . . . . . . . . 8

CC Distrib., Inc. v. United States,
38 Fed. Cl. 771 (1997). . . . . . . . . . 8

CCL Service Corp. v. United States,
43 Fed. Cl. 680 (1999). . . . . . . . . . 18

Califano v. Sanders,
430 U.S. 99 (1977). . . . . . . . . . 9

Carolina Tobacco Co. v. United States,
402 F.3d 1345 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Citizens to Preserve Overton Park, Inc. v. Volpe,
401 U.S. 402 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Florida Power & Light v. Lorion,
470 U.S. 729 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Galen Med. Assocs., Inc. v. United States,
369 F.3d 1324 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Gustafson v. Alloyd Co.,
513 U.S. 561 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Harlow v. Fitzgerald,
47 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Hart v. United States,
910 F.2d 815 (Fed. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Heckler v. Chaney,
470 U.S. 821 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Info. Tech. & Applications Corp. v. United States,
316 F.3d 1312 (Fed. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Irwin v. Dep't of Veterans Affairs,
498 U.S. 89 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

John R. Sand & Gravel Co. v. United States,
128 S. Ct. 750 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Kalvar Corp. v. United States,
543 F.2d 1298 (Cl. Ct. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Keene Corp. v. United States,
508 U.S. 200 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Lane v. Pena,
518 U.S. 187 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Lion Raisins, Inc. v. United States,
52 Fed. Cl. 115 (2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Lion Raisins, Inc. v. United States,
52 Fed. Cl. 629 (2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

McNutt v. General Motors Acceptance Corp. of Indiana,
298 U.S. 178 (1936). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Norsk Hydro Canada, Inc. v. United States,
472 F.3d 1347 (Fed. Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

Norton v. Southern Utah Wilderness Alliance,
542 U.S. 55 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

O'Neill v. HUD,
220 F.3d 1354 (Fed. Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pierce County, Wash. v. Guillen,
537 U.S. 129 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Ramcor Services Group, Inc. v United States,
185 F.3d 1286 (Fed. Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ratzlaf v. United States,
510 U.S. 135 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rex Service Corp. v. United States,
448 F.3d 1305 (Fed. Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

S.K.J. & Assoc., Inc. v. United States,
67 Fed. Cl. 218 (2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Scheuer v. Rhodes,
416 U.S. 232 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Spezaferro v. Fed. Aviation Admin.,
807 F.2d 169 (Fed. Cir. 1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Stone v. INS,
514 U.S. 386 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Tech Systems, Inc. v. United States,
50 Fed. Cl. 216 (2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Nordic Village, Inc.,
503 U.S. 30 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Williams v. United States,
71 Fed. Cl. 194 (2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Yancheng Baolong Biochemical Products Co., Ltd. v. United States,
406 F.3d 1377 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

## STATUTES

5 U.S.C. § 701(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 U.S.C. § 706. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 U.S.C. § 706(2)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5 U.S.C. § 706(2)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 1491(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1491(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 1491(b)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 2501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## REGULATIONS

19 C.F.R. § 113.13(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FFTF RESTORATION COMPANY, LLC , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-659C |
| v. | ) | (Judge Firestone) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS AND FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rule12(b)(1) of the Rules of this Court, defendant, the United States, respectfully requests that the Court dismiss this action. In the alternative, we respectfully request that the Court grant our concurrent motion for judgment upon the administrative record pursuant to Rule 52.1, because the permissible decision to cancel Solicitation No. DE-RP06-04RL14600 was made in good faith.

## BACKGROUND

### I. Factual Background Pursuant To Rule 52.1

Plaintiff FFTF Restoration Company, LLC ("FRC") challenges the Department of Energy's ("DOE's") decision to cancel Solicitation No. DE-RP06-04RL14600, for deactivation and decommissioning of the fast flux test reactor ("FFTF") at the Hanford Nuclear Reservation in Richland, Washington.

The FFTF is a 400 megawatt test nuclear reactor that was placed in "hot standby" in April 1992. In December 1993, DOE decided to shut down the reactor. A National Environmental Policy Act ("NEPA") Environmental Assessment was completed for FFTF permanent shutdown and deactivation in May 1995. DOE subsequently removed the fuel from the reactor vessel and began to clean certain reactor components of sodium residue. AR2.

In January 1997, DOE limited deactivation work at FFTF to those activities that would allow DOE the option to return the FFTF to service to produce tritium and medical isotopes. Id. In January 2001, however, the Nuclear Infrastructure Programmatic Environmental Impact Statement ("EIS") reaffirmed the earlier decision to permanently shutdown and deactivate the FFTF. In December 2001, DOE announced that it would proceed with the permanent deactivation of the facility. Id. Fluor Daniel Hanford, Inc. ("Fluor") had been awarded an environmental remediation contract in 1996, which included within its scope, deactivation of the FFTF site, among other things. See Sec. C.3(D)(4), available at http://www.hanford.gov/rl/?page=1079&parent=200 (copy and paste text into browser). Fluor began deactivation of the FFTF site in 2001. AR3.

In December 2003, DOE issued a Request for Proposals ("RFP") set aside for small business to complete deactivation and entombment (decommissioning)

of the FFTF. The RFP informed potential offerors that if complete removal or another alternative were chosen as the end-state, the parties would negotiate an amendment after award.

Five bidders submitted proposals in February 2004. Following evaluation of the offers, the contracting officer established a competitive range of three offerors and awarded the contract to SEC Closure Alliance ("SCA") in September 2004 for $235 million. The two unsuccessful offerors, EPW Closure Services (EPW) and FRC, protested the award to the Government Accountability Office (GAO). In January 2005, GAO denied EPW's protest but sustained FRC's protest and recommended that DOE amend the solicitation. Id.; Am. Cmpl. at ¶ 17.

In compliance with the GAO decision, DOE issued a revised RFP to the three offerors in the competitive range. The amended RFP divided the scope of work into two major line items: (1) deactivation; and (2) decommissioning, demolition and environmental restoration. Although DOE intended to award the deactivation line item immediately, it indicated that it would evaluate the feasibility of decommissioning upon receipt of the EIS and would decide whether to execute the decommissioning line item no later than December 31, 2006. Id.

The offerors submitted revised proposals in June 2005, and the source evaluation board determined that each proposal required additional discussion and

clarification. AR4. DOE furnished discussion questions to each offeror in August 2005 and received responses during September and October of that year. After evaluation of the responses and revisions to proposals, the source evaluation board prepared a draft final report in November 2005. Id.

However, in October 2005, DOE procurement officials first learned that the FFTF EIS likely would be integrated with a more comprehensive EIS for the cumulative impacts of groundwater and other environmental conditions at Hanford. DOE determined that the integration would delay an EIS concerning decommissioning until at least the latter part of 2007. Id. DOE thus concluded that it would be unable to decide whether to execute the decommissioning phase of the FFTF closure by December 2006. Id.

Additionally, in November 2005, DOE learned that funding for environmental management had been reduced by 16 percent from the fiscal year ("FY") 2006 appropriations level. Id. DOE viewed several projects at Hanford as posing higher environmental threats than FFTF. See Am. Cmpl. at ¶ 18 (admitting that, "[i]n January, 2005, the United States Environmental Protection Agency ("EPA") and the Washington Department of Ecology requested deferment of the FFTF contract for higher priority clean-up jobs at Hanford."). DOE further considered that the higher priority projects were experiencing cost overruns. DOE

therefore reasoned that it would have insufficient funds to support deactivation and decommissioning of the FFTF at the level anticipated in the RFP. AR4.

Given the realignment of the EIS for decommissioning in conjunction with the reduced funding, DOE weighed the relative costs and benefits of continuing with the solicitation process and concluded that it was "no longer in DOE's best interests to proceed with this procurement." Id.; AR4-5 (weighing various factors to present recommendation to Assistant Secretary). See AR10-15 (weighing costs and benefits of various options in late November 2008).

In reaching his recommendation to the Assistant Secretary of Energy that DOE cancel the solicitation, the source selection official explained that

> [t]his is not a decision reached casually or lightly. In making this recommendation, the SSO [source selection official] has considered the costs expended by the small businesses that have participated in this procurement. Until very recently, the SSO fully expected to select one of those small businesses for award under the current solicitation. Unfortunately, for reasons stated above, the SSO reluctantly has concluded that it is not in the Government's best interests to continue with this solicitation. Cancellation of the solicitation represents the only appropriate course of action to minimize further costs both to DOE and the remaining offerors.

AR6. Based upon the source selection official's analysis, the Assistant Secretary of Energy then decided to cancel the solicitation. AR1.

## II. The Amended Complaint

After oral argument upon our motion to dismiss its initial complaint, FRC filed an amended three count complaint concerning the revocation of the solicitation for deactivation and decommissioning of the FFTF reactor.

Counts I and II attempt to invoke the Court's bid protest jurisdiction under 28 U.S.C. § 1491(b)(1). Count I alleges that the cancellation violated a duty to "conduct business with integrity, fairness, and openness" under FAR 1.102. Am. Cmpl. at ¶¶ 34-41. The second count alleges a "Breach of Mandatory Requirement to Set Aside Contracts For Exclusive Participation By Small Business Concerns." Id. at ¶¶ 42-49 (citing FAR 19.502-2(b)).

In Count III, FRC repeats its "Breach of Implied-In-Fact Contract" claim from its original complaint, id. at ¶¶ 50-55, attempting to invoke the Court's jurisdiction pursuant to 28 U.S.C. § 1491(a)(1), in a claim for bid proposal and protest costs as an unsuccessful bidder.

## SUMMARY OF THE ARGUMENT

The Court should dismiss the first two counts of the amended complaint for lack of jurisdiction because FRC has not identified any mandatory regulation that is enforceable pursuant to 28 U.S.C. § 1491(b)(1) or the Administrative Procedures Act ("APA"). The Court should also dismiss FRC's "Breach of

Implied-In-Fact Contract" claim, id. at ¶¶ 50-55 (Count III), because FRC may not invoke the Court's jurisdiction for such a claim pursuant to section 1491(a)(1).

In the alternative, should the Court conclude that it possesses jurisdiction to entertain the merits, the record demonstrates that DOE permissibly reacted to the changed circumstances with respect to decommissioning. Indeed, DOE first learned that it would be unable to issue a determination concerning decommissioning by the date contained in the solicitation in October 2005, only two months before cancellation. Then, in November 2005, DOE learned of a significant reduction in funding for environmental management that would prevent the second, decommissioning phase from going forward. Only at that time did DOE consider cancelling the solicitation and, after making its determination, DOE immediately notified FRC of its decision. Accordingly, there is no basis for FRC's refrain that DOE "chose . . . not to disclose to Plaintiff its real intent of cancelling the Amended Solicitation while continuing to have the work performed by a large business contractor." Am. Cmpl. at ¶ 39; id. at ¶ 54 ("at the same time it was encouraging Plaintiff to submit compliant proposals and revised proposals and actively participate in the solicitation process, it was making the determination, without any notice to Plaintiff, to cancel the Solicitation and Amended Solicitation and to have the work performed by a large business.").

# ARGUMENT

## I. Standard of Review

### A. Standard For Rule 12(b)(1) Motion to Dismiss

FRC bears the burden of establishing jurisdiction. Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (quoting Hart v. United States, 910 F.2d 815, 817 (Fed. Cir. 1990)). Unless the undisputed facts reveal a basis upon which FRC may prevail, the Court should dismiss the matter for want of jurisdiction. Williams v. United States, 71 Fed. Cl. 194, 197 (2006) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by, Harlow v. Fitzgerald, 47 U.S. 800 (1982)).

If a defendant challenges the jurisdiction of the Court, the plaintiff may not rely merely upon allegations in the complaint, but must instead identify relevant, competent proof to establish jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936). Indeed, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." CC Distrib., Inc. v. United States, 38 Fed. Cl. 771, 775 (1997) (quoting Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981)).

The Court may only "render judgment on [1] an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a

proposed contract or [2] to a proposed award or [3] the award of a contract or [4] any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Furthermore, "[i]n any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5." 28 U.S.C. § 1491(b)(4).

Therefore, under the Court's jurisdictional statute, review is available only for an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement" pursuant to the APA. Like section 1491(b)(1), the APA provides for this ultra vires standard of review. 5 U.S.C. § 706(2)(C), (D).

**B. Standard And Scope Of Review For Procurement Challenges**

In applying the statutorily mandated ultra vires standard of review, the Court accords procurement decisions a "presumption of regularity." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977) (citations omitted).

Moreover, in addressing whether DOE violated any "statute or regulation," 28 U.S.C. § 1491(b)(1), pursuant to Rule 52.1, the Court reviews the agency's procurement decisions to determine whether they are supported by the already existing administrative record. The standards applicable to a motion for judgment

upon the administrative record differ from those applied in the context of a Rule 56 motion for summary judgment. Bannum, Inc. v. United States, 404 F.3d 1346, 1355-56 (Fed. Cir. 2005) (holding that RCFC [52.1] is designed to provide for expedited trial upon a paper record and that the trial court is required to make factual findings based upon the record evidence); Florida Power & Light v. Lorion, 470 U.S. 729, 743-44 (1985) (quoting Camp, 411 U.S. at 142, to hold that "the focal point for judicial review should be the administrative record already in existence, not some record made initially by the reviewing court.").

Unlike a motion for summary judgment, "proceeding under RCFC [52.1] merely restricts the evidence to the agency record." Id. at 1356. "Thus, the central inquiry on a motion for summary judgment -- whether the movant has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes summary judgment -- has no bearing on a review of the administrative record." Tech Systems, Inc. v. United States, 50 Fed. Cl. 216, 222 (2001).

## II. FRC Has Not Established The Court's Jurisdiction To Entertain Counts I And II Of The Amended Complaint Because The Cited FAR Provisions Are Not Mandatory Or Relevant

FRC alleges that, in cancelling the procurement here, DOE violated

> [m]andatory regulations to "[conduct business with integrity, fairness, and openness" (FAR 1.102(b)(3); *see also* FAR 1.102-2(c)); its mandatory regulations to set aside procurement for exclusive participation of small

> business concerns (FAR 19.502-2)

Am. Cmpl. at ¶ 1.

Although, as "long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction" pursuant to section 1491(b)(1), Ramcor Services Group, Inc. v United States, 185 F.3d 1286,1288 (Fed. Cir. 1999), no such "violation" occurred here because neither FAR 1.102(b)(3) nor 19.502-2 is "mandatory." Rather, as shown below, both provisions are simply procurement guidelines that impose no mandatory duty, and therefore, by definition, cannot be "violated."[1]

**A. The Court Lacks Jurisdiction To Entertain Count I Because FRC Claims Only That DOE Violated A Guideline, And Not Any Mandatory Statute Or Regulation**

Count I alleges that DOE violated FAR 1.102. However, the Court lacks jurisdiction to entertain this claim because this provision is not a mandatory regulation that is subject to the standard here.

FAR 1-102 states, in relevant part:

> Statement of guiding principles for the Federal
> Acquisition System –

[1] Should the Court conclude that the mere recitation of a regulation in the complaint is sufficient to confer subject matter jurisdiction under section 1491(b)(1), then Counts I and II should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted for identical reasons.

(a) The vision for the Federal Acquisition System is to deliver on a timely basis the best value product or service to the customer, while maintaining the public's trust and fulfilling public policy objectives. Participants in the acquisition process should work together as a team and should be empowered to make decisions within their area of responsibility.

(b) The Federal Acquisition System will—

(1) Satisfy the customer in terms of cost, quality, and timeliness of the delivered product or service by, for example—

(i) Maximizing the use of commercial products and services;

(ii) Using contractors who have a track record of successful past performance or who demonstrate a current superior ability to perform; and

(iii) Promoting competition;

(2) Minimize administrative operating costs;

(3) Conduct business with integrity, fairness, and openness; and

(4) Fulfill public policy objectives.

* * * * *

(d) The role of each member of the Acquisition Team is to exercise personal initiative and sound business judgment in providing the best value product or service to meet the customer's needs. In exercising initiative, Government members of the Acquisition Team may

> assume if a specific strategy, practice, policy or procedure is in the best interests of the Government and is not addressed in the FAR, nor prohibited by law (statute or case law), Executive order or other regulation, that the strategy, practice, policy or procedure is a permissible exercise of authority.

FAR 1-102 (emphasis added).

This aspirational provision imposes no clear duty necessary to determine a violation. See, e.g., Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 63 (2004) ("[a] claim under § 706(1) [compelling agency action unlawfully withheld] can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*.") (emphasis in original). In this case, FAR 1-102 provides only "guiding principles" and no "required" action. The narrow waiver of sovereign immunity provided for a challenge to a "violation of statute or regulation in connection with a procurement or a proposed procurement," 28 U.S.C. § 1491(b)(1), therefore cannot be broadened to encompass "guidance" or similar aspirational policy statements. See also At&T v. United States, 307 F.3d 1374, 1379-80 (Fed. Cir. 2002) (holding that FAR Guidelines concerning the selection of contract type are merely advisory and do not create a cause of action if violated).

Indeed, this case is congruent to Carolina Tobacco Co. v. United States, 402 F.3d 1345 (Fed. Cir. 2005), where the appellate court concluded that "the

inclusion of "guidelines" in a regulation did not impose any "explicit requirement" upon the Government agency to act in a certain manner. In that case, the Customs Service (currently known as U.S. Customs and Border Protection ("CBP")), issued a regulation for setting the amount of bond coverage that importers must post, which consisted of a number of "guidelines" for port captains to follow. Id. at 1349 (citing 19 C.F.R. § 113.13(b)). The court concluded that the port director was not required to follow these "guidelines," however, reasoning that "guidelines" impose no mandatory duties upon agency decisionmakers:

> The Section 113.13(b) regulation provides "Guidelines for determining amount of bond." Guidelines are just that. They provide suggested standards for government officials to use in performing their duties. They do not impose explicit requirements, but merely indicate appropriate courses for the officials to follow.

Id. (quoting 19 C.F.R. § 113.13(b)).

In sum, the "guiding principles" and "vision" of FAR 1-102 "do not impose explicit requirements, but merely indicate appropriate courses for the officials to follow." Carolina Tobacco, 402 F.3d at 1349. Count I therefore fails to allege actual "violation of statute or regulation in connection with a procurement or a proposed procurement," 28 U.S.C. § 1491(b)(1), and thus, should be dismissed.

Lastly, review of such allegations pursuant to 5 U.S.C. § 706 is precluded because the APA does not apply to "agency action is committed to agency

discretion by law." 5 U.S.C. § 701(a)(2); see Heckler v. Chaney, 470 U.S. 821, 830 (1985) (explaining that, "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'").

### B. The Court Lacks Jurisdiction To Entertain Count II Of The Amended Complaint

In Count II, FRC maintains that the cancellation of the solicitation for deactivation and decommissioning violates FAR 19.502-2(b). However, this provision addresses only the decision to set aside acquisitions and does not mandate termination of contracts already being performed to resolicit the same work from small businesses.

FAR 19.502-2(b) provides that "[t]he contracting officer shall set aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that" certain conditions are met. (emphasis added) . It contains no requirement to terminate contracts to resolicit the same work from small businesses. Nor does it address decisions to cancel solicitations. Thus, FAR 19.502-2(b) provides no basis for FRC's complaint.[2]

---

[2] Count II can be viewed as a challenge DOE's decision not to terminate the Fluor contract. Thus, the "true nature of [Count II]" is a time-barred challenge to the 1996 award of the Fluor contract -- not the termination of the solicitation. Norsk Hydro Canada, Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006);

## III. The Court Lacks Jurisdiction To Entertain Count III Of The Amended Complaint Because Section 1491(b)(1) Superseded Any "Implied In Fact" Contract With Respect To Bid Protests

As we demonstrated in our original motion to dismiss, FRC identifies no "alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). However, in enacting the Administrative Disputes Resolution Act ("ARDA"), Congress mandated that, in bid protest situations, it intended the Government only to be bound by actual statutes and regulations. Because Count III lies outside the only jurisdictional provision that addresses claims "in connection with a procurement or a proposed procurement," it is barred for want of a waiver of sovereign immunity.

### A. Count III Identifies No Waiver Of Sovereign Immunity

"Waivers of sovereign immunity must be 'unequivocally expressed.'" Yancheng Baolong Biochemical Products Co., Ltd. v. United States, 406 F.3d 1377, 1382 (Fed. Cir. 2005) (quoting United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992); citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95

---

see John R. Sand & Gravel Co. v. United States, 128 S. Ct. 750 (2008) (citing 28 U.S.C. § 2501) (six year statute of limitations); Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (objections to solicitation waived if not raised in a pre-award protest). Also, because FRC does not allege that it bid upon the Fluor contract, it has failed to establish its standing. Rex Service Corp. v. United States, 448 F.3d 1305 (Fed. Cir. 2006).

(1990)). The Supreme Court has found that "firmly grounded in [their] precedents" is the fact that "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text" and "will not be implied." Lane v. Pena, 518 U.S. 187 at 192 (1994). FRC "has not pointed to any language in [any statute] that unequivocally expresses a waiver of sovereign immunity for liability [under an implied contract theory to collect damages in connection with a procurement or a proposed procurement], and according to Supreme Court precedent, we cannot imply one." Yancheng, 406 F.3d at 1382.

**B. The Court's ADRA Precedent Merits Dismissal**

FRC has conceded that we "cite[d] to a number of cases of this Court in support of [our] proposition that ADRA eliminated this [C]ourt's jurisdiction over implied-in-fact contracts." FRC Opp. to Gov. Mot. to Dis. at 9 (citing Block v. United States, 66 Fed. Cl. 68, 76 (2005); S.K.J. & Assoc., Inc. v. United States, 67 Fed. Cl. 218 (2005); Lion Raisins, Inc. v. United States, 52 Fed. Cl. 629 (2002) (Lion Raisins I)).

The Court's reasoning in Block, S.K.J., Lion Raisins, and other post-ADRA decisions holding that any "fiction" of an implied contract with respect to objections to the procurement process did not survive enactment of the bid protest statute is persuasive. In all cases addressing this issue, the Court held that the

codification of a cause of action and scope and standard of review acted to occupy the field with respect to challenges to the solicitation process. "[A]fter the Tucker Act was amended in 1996 by the ADRA to give the Court of Federal Claims jurisdiction over both pre-award and post-award bid protest cases, the need to rely on a 'virtual implied contract' to fairly and honestly consider bids was eliminated." Block, 66 Fed. Cl. at 77. Indeed, with the statutory amendment, "objections to the procurement process must [now] be based on claims identified in . . . 28 U.S.C. § 1491(b)(1)." Id.

As the Court further explained, because section "1491(b) specifically is oriented toward bid protest claims, [this] rais[es] a presumption that Congress intended that its provisions and limitations control in bid protest situations." Lion Raisins, Inc. v. United States, 52 Fed. Cl. 115, 120 (2002) (Lion Raisins II) (citing Keene Corp. v. United States, 508 U.S. 200, 209 (1993); O'Neill v. HUD, 220 F.3d 1354, 1361 (Fed. Cir. 2000)). The Court thus reasoned that, "[t]o state that section 1491(b)(1) supersedes the implied-contract theory of bid protest jurisdiction under section 1491(a)(1) is merely to say that, because section 1491(b)(1) encompasses all claims that could have been brought under the former statute and more, it obviates the need for the implied-contract theory." Id.; see CCL Service Corp. v. United States, 43 Fed. Cl. 680, 687 (1999) ("Legislation

superseded th[e] fiction" of the "implied contract to have the involved bids fairly and honestly considered."). The Court simply followed the maxim that, "'[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.'" Pierce County, Wash. v. Guillen, 537 U.S. 129, 145 (2003) (quoting Stone v. INS, 514 U.S. 386, 397 (1995)).

The Court's reasoning is strong and its holdings are correct. FRC obviously "object[s] to the procurement process," Block, 66 Fed. Cl. at 77, and this case is a "bid protest situation[]." Lion Raisins II, 52 Fed. Cl. at 120. "[L]ook[ing] to the true nature of the action," Norsk Hydro, 472 F.3d at 1355 (quotations omitted), results in an objection to the procurement process, which the Court lacks jurisdiction to entertain.

Furthermore, as the Court noted in the cases above, finding of an "implied contract" in light of the clear congressional mandate of a scope and standard of review in "bid protest situations" would render the statutory right of action to challenge "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement" superfluous. 28 U.S.C. § 1491(b)(1). Assuming existence of an implied-in-fact contract to consider bids fairly "in connection with a procurement or a proposed procurement," there would be no need for a statute providing a much more limited scope and standard of review for

the Court to address complaints arising from identical facts. It is axiomatic that "statutes should be read so far as possible to give independent effect to all their provisions." Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 724 (citing Ratzlaf v. United States, 510 U.S. 135, 140-41 (1994)). Indeed, there is "[a] reluctance to treat statutory terms as surplusage." Id.; see Gustafson v. Alloyd Co., 513 U.S. 561, 574 (1995) (courts "will avoid a reading which renders some words altogether redundant."). As did the Supreme Court, we respectfully request that the Court "decline to say [Congress] included the words ['any alleged violation of statute or regulation in connection with a procurement or a proposed procurement'] for no purpose." Gustafson, 513 U.S. 561 at 575.

## IV. The Cancellation Was In Accordance With Law

In the alternative, should the Court conclude that it possesses jurisdiction to entertain this matter, we respectfully request that it enter judgment in favor of the United States pursuant to Rule 52.2, because the cancellation was not in bad faith.

Regardless of which legal theory FRC identifies, each count of FRC's complaint hinges upon speculation that the Government acted in bad faith by misleading FRC into expending resources with full knowledge that the solicitation would be cancelled. See Am. Cmpl. at ¶ 39 (Count I allegation that DOE "chose instead not to disclose to Plaintiff its real intent of cancelling the Amended

Solicitation while continuing to have the work performed by a large business contractor"); id. at ¶ 40 ("resources have all been wasted because of Defendant's breach of its duty of conducting business with integrity, fairness, and openness"); id. at ¶¶ 47-48 (Count II allegation that DOE "unreasonably decided to cancel the Amended Solicitation and have the work performed by a large business contractor. Plaintiff invested a substantial amount of money, time and effort to submit its proposals and related information to DOE. These resources have all been wasted because of Defendant's violation of procurement regulations and the associated statutory requirements with regard to setting aside acquisitions for exclusive participation by small business concerns."); id. at ¶ 54 (Count III allegation that DOE "breached its implied-in-fact contract with Plaintiff when at the same time it was encouraging Plaintiff to submit compliant proposals and revised proposals and actively participate in the solicitation process, it was making the determination, without any notice to Plaintiff, to cancel the Solicitation and Amended Solicitation and to have the work performed by a large business contractor.").

However, the record makes clear that DOE did not begin to consider cancellation of the solicitation until learning of the loss of 16 percent of its FY 2006 funding in November 2005 -- only one month into FY 2006 and only one

month before the challenged cancellation.

Indeed, DOE's reasoning makes complete sense. It was not until November 2005 that the agency learned that it would lack sufficient funding for FFTF decommissioning activities. At that time, DOE immediately began the process reevaluating its priorities and weighing the costs and benefits of various courses of action, including amending the solicitation to exclude the decommissioning line item or cancelling the solicitation and allowing the incumbent contractor to complete the deactivation phase under the existing contract. AR10-15.

This evidence is further supported by the fact that the DOE continued to conduct itself as if it intended to award the contract until November 2005 at the latest. AR4 (noting that source evaluation board prepared a draft final report upon the various bids in November 2005).

FRC provides no evidence that contradicts this record evidence, let alone, the requisite "well nigh irrefragable proof" of a "specific intent to injure" necessary to rebut the presumption of good faith. See, e.g., Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1337 (Fed. Cir. 2004) (requiring party to "show almost irrefragable proof" by "clear and convincing evidence of a specific intent to injure"); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1323 n.2 (Fed. Cir. 2003) (citing Spezaferro v. Fed. Aviation Admin., 807

F.2d 169 (Fed. Cir. 1986)) ("to overcome the presumption of good faith, '[t]he proof must be almost irrefragable'"); Am-Pro Protective Agency v. United States, 281 F.3d 1234, 1241 (Fed. Cir. 2002) (noting that "for almost 50 years this court and its predecessor have repeated that we are loath to find to the contrary of good faith, and it takes, and should take, well-nigh irrefragable proof to induce us to do so") (internal quotations and bracketing omitted); Kalvar Corp. v. United States, 543 F.2d 1298, 1301-02 (Cl. Ct. 1976) ("requir[ing] well-nigh irrefragable proof to induce the court to abandon the presumption of good faith dealing").

This binding precedent makes it abundantly clear that the "well nigh irrefragable" standard applies here. FRC has failed to meet its burden under this standard and has failed to identify any evidence that might call into question the presumption of regularity that governs bid protest situations, rather, FRC advances only conclusory statements. Accordingly, should the Court deny our motion to dismiss, we respectfully request that the Court enter judgment in favor of the Government pursuant to Rule 52.1.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss this action pursuant to Rule 12(b)(1) or, in the alternative, enter judgment in favor of the United States pursuant to Rule 52.2.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ BRYANT G. SNEE
Deputy Director

/s/ STEPHEN C. TOSINI
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-5196
Fax: (202) 514-7969
Attorneys for Defendant

OF COUNSEL:
DON W. CROCKETT
Office of the General Counsel
Department of Energy
Washington, D.C.

April 16, 2008

## CERTIFICATE OF FILING

I hereby certify that on April 16, 2008, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS AND FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Stephen C. Tosini