IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FFTF RESTORATION CO., LLC , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-659C |
| v. | ) | (Judge Firestone) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRYANT G. SNEE
Deputy Director

STEPHEN C. TOSINI
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-5196
Fax: (202) 514-7969
Attorneys for Defendant

OF COUNSEL:
DON W. CROCKETT
Office of the General Counsel
Department of Energy
Washington, D.C.

July 2, 2008

# TABLE OF CONTENTS

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Response To FRC's "Factual" Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. The Court Lacks Jurisdiction To Entertain FRC's Complaint. . . . . . . . . . . . . 8

A. The Regulations Cited In Counts I And II Are Irrelevant. . . . . . . . . . 8

1. FAR Provision To Conduct Business With Integrity, Fairness And Openness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

2. FRC's Claim That DOE Was Legally Obligated To Cancel Portion Of Existing Contract And Enter Into New Contract. . 11

B. The Court Lacks Jurisdiction To Entertain FRC's "Implied-In-Fact" Contract Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III. FRC Has Not Demonstrated Entitlement To Judgment Upon The Administrative Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## CASES

Aero Corp., S.A. v. United States,
38 Fed. Cl. 739 (1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Am-Pro Protective Agency v. United States,
281 F.3d 1234 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

At&T v. United States,
307 F.3d 1374 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Bannum, Inc. v. United States,
404 F.3d 1346 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Biltmore Forest Broad. FM, Inc. v. United States,
80 Fed. Cl. 322 (2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Block v. United States,
66 Fed. Cl. 68 (2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Camp v. Pitts,
411 U.S. 138 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Carolina Tobacco Co. v. United States,
402 F.3d 1345 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Florida Power & Light v. Lorion,
470 U.S. 729 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Forestry Surveys & Data v. United States,
44 Fed. Cl. 485 (1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Galen Med. Assocs., Inc. v. United States,
369 F.3d 1324 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

HWA, Inc. v. United States,
78 Fed. Cl. 685 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hamilton Sundstrand Power Sys. v. United States,
75 Fed. Cl. 512 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Heckler v. Chaney,
470 U.S. 821 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hunt Bldg. Co. v. United States,
61 Fed. Cl. 243 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Info. Tech. & Applications Corp. v. United States,
316 F.3d 1312 (Fed. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Kalvar Corp. v. United States,
543 F.2d 1298 (Cl. Ct. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

L-3 Communications Integrated Sys., L.P. v. United States,
79 Fed. Cl. 453 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Lion Raisins, Inc. v. United States,
52 Fed. Cl. 629 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Norton v. Southern Utah Wilderness Alliance,
542 U.S. 55 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Nutech Laundry & Textile, Inc. v. United States,
56 Fed. Cl. 588 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

OAI Am., Inc. v. United States,
68 Fed. Cl. 108 (Fed. Cl. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Phoenix Air Group v. United States,
46 Fed. Cl. 90 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

S.K.J. & Assocs., Inc. v. United States,
67 Fed. Cl. 218 (2005). . . . . . . . . . 13

Spezaferro v. Fed. Aviation Admin.,
807 F.2d 169 (Fed. Cir. 1986). . . . . . . . . . 17

Unified Architecture & Eng'g, Inc. v. United States,
46 Fed. Cl. 56 (2000). . . . . . . . . . passim

Wetsel-Oviatt Lumber Co., Inc. v. United States,
40 Fed. Cl. 557 (1998). . . . . . . . . . 14

**STATUTES**

5 U.S.C. § 701(a)(2). . . . . . . . . . 10, 18

5 U.S.C. § 706(2)(C). . . . . . . . . . 8

5 U.S.C. § 706(2)(D). . . . . . . . . . 8

28 U.S.C. § 1491(a)(1). . . . . . . . . . 13, 14

28 U.S.C. § 1491(b). . . . . . . . . . 13, 14

28 U.S.C. § 1491(b)(1). . . . . . . . . . passim

28 U.S.C. § 1491(b)(4). . . . . . . . . . 8

**REGULATIONS**

FAR 1.102(b)(3). . . . . . . . . . passim

FAR 1.102-2(c). . . . . . . . . . 2

FAR 14.404-1. . . . . . . . . . 10

FAR 19.502-2. . . . . . . . . . 2

FAR 19.502-2(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

FAR 19.506. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

FAR 19.506(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**MISCELLANEOUS**

EPW Closure Services, LLC; FFTF Restoration Co., LLC,
B-294910 (Jan. 12, 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FFTF RESTORATION CO., LLC , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-659C |
| v. | ) | (Judge Firestone) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS AND FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

In our motion to dismiss, we demonstrated that the Court lacks jurisdiction to entertain this matter because plaintiff FFTF Restoration Company, LLC ("FRC") failed to identify any mandatory regulation that would preclude the Department of Energy from canceling Solicitation No. DE-RP06-04RL14600. Moreover, we demonstrated that the decision to cancel the solicitation was made in good faith. FRC identifies no legal basis or record facts that would upset these demonstrations. Moreover, in its response, FRC abandons the primary factual basis for its action; specifically, that the Department of Energy ("DOE") had encouraged FRC to expend resources upon responding to the solicitation, all the while subjectively intending to cancel the solicitation. See Am. Cmpl. at ¶ 39 (maintaining that DOE "chose . . . not to disclose to Plaintiff its real intent of cancelling the Amended Solicitation while continuing to have the work performed

by a large business contractor"); id. at ¶ 54 ("at the same time it was encouraging Plaintiff to submit compliant proposals and revised proposals and actively participate in the solicitation process, it was making the determination, without any notice to Plaintiff, to cancel the Solicitation and Amended Solicitation and to have the work performed by a large business.").

## ARGUMENT

### I. Response To FRC's "Factual" Claims

FRC states that "the following facts are known" based upon "the administrative record ('AR') produced by defendant" and "the uncontested facts submitted by FRC." FRC Br. at 2. This statement is inaccurate because FRC has submitted no statement of factual background pursuant to Rule 52.1, and does not contest any of the facts asserted in our Rule 52.1 statement of factual background. Gov. Br. at 1-5. Because FRC included no "Counterstatement of Facts" as required under Rule 52.1(b), the facts contained in our brief are established.

Further, our motion to dismiss presents an issue of law, in which the facts in the Amended Complaint are assumed to be true. Our alternative Rule 52.1 motion for judgement upon the administrative record, however, is to be decided solely on the administrative record. Bannum, Inc. v. United States, 404 F.3d 1346, 1355-56 (Fed. Cir. 2005) (holding that RCFC [52.1] is designed to provide for expedited

trial upon a paper record and that the trial court is required to make factual findings based upon the record evidence); Florida Power & Light v. Lorion, 470 U.S. 729, 743-44 (1985) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973), to hold that "the focal point for judicial review should be the administrative record already in existence, not some record made initially by the reviewing court."); OAI Am., Inc. v. United States, 68 Fed. Cl. 108, 110 (Fed. Cl. 2005) (quoting Camp, 411 U.S. at 142, to hold that the scope of review limited to "the 'contemporaneous' record made at the time the action was taken.").

Nevertheless, the so-called "FACTS" asserted by FRC are an amalgam of legal argument and "facts" that appear to originate from three sources: (1) unproven allegations from the Amended Complaint; (2) the administrative record; and (3) non-record attachments to FRC's brief. The first and third sources are outside the scope of review and should be disregarded. Our specific objections to purported "facts" in FRC's brief that are either legal argument or not in the administrative record are set forth below:

Fact No. 4, FRC Br., at 2, maintains that "FRC was fully qualified to do all of the work having been evaluated as 'Outstanding' in 'Technical Approach, Key Personnel, and Business Management' and 'Good' in ' Experience' and 'Past Performance.'" (citing AR Ex. D at ES-4). These assertions are erroneous

because the draft Source Evaluation Board ("SEB") report was not final.[1]

Fact No. 4-II, FRC Br. at 3, is based upon DOE's budget requests to Congress for FY 2006 through 2009, which were attached to FRC's brief. Because the cancellation decision at issue in this case was made on December 22, 2005, AR16, information regarding DOE's subsequent budget requests, that are, by definition, outside the administrative record, are not within the scope of review. Moreover, those subsequent "facts" have no bearing upon whether DOE permissibly cancelled the procurement on December 22, 2005.

Fact No. 5, id. at 4, presents the flawed legal argument that DOE, not FRC, was at fault for any delays caused by FRC's protest to the Government Accountability Office ("GAO"). The fact is that if FRC had not challenged the initial award to SEC Closure Alliance, that small business would have replaced the incumbent contractor to finish the deactivation work. This has no relevance to the single question before the Court in our Rule 52.1 motion -- whether DOE permissibly cancelled the solicitation.

---

[1] If the SEB report were final, then the administrative record would simply call into question FRC's standing to advance any protest because of the various bidders' technical ratings and prices. AR Ex. D at ES-2 (a page to which FRC cites in its brief at page 8).

Fact No. 6, id. at 6, is also a flawed legal argument presented as fact that relies only upon evidence outside the administrative record. FRC's argument that the "cancellation decision was based on 'Annual Funding' for the 'Incumbent Contractor' of just '$2-3' million rather than the $22.5 million that has been the annual average since the cancellation decision," is belied by the very chart upon which FRC relies, AR12. That chart, which presents "FFTF Options," estimates that if the option to discontinue the project in FY 2007 and conduct surveillance and maintenance ("S&M") is adopted, the costs would be $46 million for FY 2006, $35 million for FY 2007, and $10 million in both years for S&M. This totals $91 million. Accordingly, FRC's argument is based upon its own misreading of the record.

Fact No. 9, FRC Br. at 7-8, contains more unsupported legal argument. According to FRC:

> With regard to Cancellation Reason V – Procurement will not be cost effective due to incumbent contractor continuing performance – the government's independent cost estimate was approximately $350 million (AR3) which, although not stated in the record, would have been based on the current expenditure rate of the incumbent, large business contractor. Each of the three small business offerors offered prices that were significantly under the large business rate . . .

Once again, that argument lacks any basis in the record. Moreover, FRC ignores the fact that because of the delays and changed circumstances, the revised solicitation had been broken down into two contract line item numbers ("CLINs"): CLIN 1 – deactivation, and CLIN 2 – decommissioning, demolition and environmental restoration. AR3. Because of the delays with respect to the environmental impact statement ("EIS"), the feasibility of CLIN 2 was to be evaluated only after receipt of the EIS. AR 3. The "options" chart at AR12, therefore, estimates that the costs of finishing CLIN1 and then going to surveillance and maintenance would be the same for either the incumbent contractor or the winning small business, i.e., $46 million per year from 2008 to 2010 (compare the two middle columns). FRC's speculation as to comparative costs for both CLIN 1 and 2 is thus irrelevant as well as lacking of record support.

Fact No. 10, FRC Br. at 8, again presents argument that is directly contradicted by the administrative record. According to FRC:

> Nothing in the administrative record supports the conclusion that it would be cost effective to DOE and the taxpayer to have the incumbent large business contractor continue performance. There are no calculations, no estimates, no figures.

To the contrary, the Frei memorandum, AR 1-7, sets out the basis for the cancellation in great detail, i.e., the unanticipated delay in the procurement; the

unanticipated delay with respect to the EIS; the unanticipated 16 percent reduction in Congressional funding for DOE's Energy Management budget in FY 2007; the consequential need to postpone the decommissioning and demolition phase of the project; the progress of the incumbent contractor in completing the deactivation phase; and the recommendations of the Environmental Protection Agency ("EPA") and Washington State Department of Ecology to prioritize other more urgent aspects of the cleanup at the Richland facility. The "figures" and "calculations" supporting the decision to cancel the procurement, complete the deactivation phase, and place the facility in the surveillance and maintenance mode are set forth in the charts found at AR10-15.

Fact No. 11, FRC Br. at 8, argues that FRC's response to the solicitation was "compliant" is based solely upon its complaint, and not the record. Moreover, as discussed above, the SEB report was not yet final, and thus, DOE made no determination with respect to the sufficiency of any bid.

Fact No. 12, FRC Br. at 8, asserts that the "award [of a contract under the challenged solicitation], following a protest filed by FRC at the [GAO], was determined to be in violation of procurement law and the contract was terminated." This is inaccurate. The GAO never determined that the award violated the law; rather, the GAO concluded only that the evaluation of the

proposals was inconsistent with the terms of the solicitation. EPW Closure Services, LLC; FFTF Restoration Co., LLC, B-294910 (Jan. 12, 2005).

## II. The Court Lacks Jurisdiction To Entertain FRC's Complaint

### A. The Regulations Cited In Counts I And II Are Irrelevant

FRC has failed to identify any mandatory regulation that is enforceable pursuant to 28 U.S.C. § 1491(b)(1) or the Administrative Procedures Act ("APA").

As previously discussed, the Dispute Resolution Act of 1996 ("ADRA") grants the Court jurisdiction to "render judgment on [1] an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or [2] to a proposed award or [3] the award of a contract or [4] any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Likewise, the ADRA mandates that, "[i]n any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5." 28 U.S.C. § 1491(b)(4). Under the Court's jurisdictional statute, review is available only for "alleged violation of statute or regulation in connection with a procurement or a proposed procurement" pursuant to the standards of the APA. Like the ADRA, the APA provides for ultra vires standard of review -- challenges to agency action not in accord with statute or regulation. 5 U.S.C. §§ 706(2)(C), (D).

In an attempt to fit its complaint into the statutorily mandated ultra vires standard in this protest of the cancellation of a solicitation, FRC maintains that DOE violated two "[m]andatory regulations." Am. Cmpl. at ¶ 1. First, FRC asserts that DOE violated a FAR provision requiring the Government to "conduct business with integrity, fairness, and openness." Id. (citing FAR 1.102(b)(3); 1.102-2(c)). Second, FRC alleges that DOE violated "mandatory regulations to set aside procurement for exclusive participation of small business concerns." Id. (citing FAR 19.502-2).

**1. FAR Provision To Conduct Business With Integrity, Fairness And Openness**

With respect to the Count I, FRC erroneously maintains that the administrative record lacks a rational basis for the decision not to continue with the solicitation, and thus, DOE violated the obligation to "conduct business with integrity, fairness, and openness." FRC Br. at 11-18. This argument applies the wrong standard, attempting to equate the decision to cancel a solicitation with the "award of a contract" under 28 U.S.C. § 1491(b)(1). Rather, the only question here must be whether there is any "violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

There is simply no statute or regulation that governs the pre-award cancellation of a negotiated procurement, such as that in this case. Indeed, the

FAR Council has promulgated provisions that address other types of cancellations, for example, providing standards for agencies to cancel "sealed bid" procurements after the sealed bids have been opened. See, e.g., FAR 14.404-1.

In contrast, there is no "law to apply" in this case, in which DOE decided not to act -- i.e., by not going forward with a solicitation. Heckler v. Chaney, 470 U.S. 821, 830-31 (1985) (rejecting challenge to agency decision not to enforce law pursuant to APA exclusion of actions that are "committed to agency discretion" pursuant to 5 U.S.C. § 701(a)(2)).

In Heckler v. Chaney, Supreme Court explained that the exception to APA review pursuant to 5 U.S.C. § 701(a)(2) applies "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." Heckler v. Chaney, 470 U.S. at 830.

In this case, FAR 1.102(b)(3) contains only "guidelines" and lacks any meaningful standard against which to determine whether cancellation of the solicitation was lawful. FRC does not even attempt to distinguish the binding precedent holding that "guidelines" and "policy statements" do not provide necessary law to apply, and thus, concedes this point by omission. See Gov. Br. at

13-14 (quoting Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 63 (2004); Carolina Tobacco Co. v. United States, 402 F.3d 1345 (Fed. Cir. 2005); and citing At&T v. United States, 307 F.3d 1374, 1379-80 (Fed. Cir. 2002)). Accordingly, the Court should dismiss Count I for lack of jurisdiction.

### 2. FRC's Claim That DOE Was Legally Obligated To Cancel Existing Contract And Enter Into New Contract

FRC argues that, by not terminating a portion of a fully executed contract with a large business in favor of resoliciting that work as a small business set aside, DOE violated a mandatory duty to "set aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that—(1) offers will be obtained from at least two responsible small business concerns…; and (2) award will be made at fair market prices." FRC Br. at 18 (quoting FAR 19.502-2(b)). That provision, however, only speaks of "set[ting] aside an acquisition." It does not require termination of a portion of an existing contract. Indeed, nowhere does FRC challenge the validity of the existing contract with Fluor Daniel Hanford, Inc. ("Fluor"). Moreover, there is no basis for asserting that once a procurement is "set aside" under FAR 19.502-2(b), the agency must ultimately procure whatever is sought in the solicitation.

FRC also argues, for the first time in its brief at pages 18-19, that DOE violated FAR 19.506(a), which provides that, "if before award of a contract

involving a set-aside for small business, the contracting officer considers that the award to a small business concern would be detrimental to the public interest (e.g., because of unreasonable price), the contracting officer may withdraw the small business set-aside determination." (emphasis added). This provision also requires the contracting officer to provide Small Business Administration ("SBA") with written notice stating the reasons for the withdrawal of the small business set aside determination. Id.

As a preliminary matter, FRC never raised this claim in its Amended Complaint and may not allege this new ground in response to our dispositive motion. Rather, FRC must follow Rule 15 and seek the Court's leave to amend.

Moreover, if the Court were to reach the merits of this new claim, FAR 19-506 does not apply here because DOE did not withdraw the small business set-aside determination. Rather, DOE elected not to go forward with the solicitation -- instead of opening the procurement to large businesses. See, e.g., Nutech Laundry & Textile, Inc. v. United States, 56 Fed. Cl. 588, 592 (2003) (discussing case in which "CO advised [plaintiff] that [the agency] would not award a contract upon the solicitation. Instead, the CO advised . . . that it planned to conduct an unrestricted, full and open competition.").

## B. The Court Lacks Jurisdiction To Entertain FRC's "Implied-In-Fact" Contract Claim

FRC has failed to establish the Court's jurisdiction to entertain Count III of the Amended Complaint because jurisdiction to entertain this claim lies only under the ADRA, 28 U.S.C. § 1491(b), not section 1491(a)(1). FRC concedes that the Court has repeatedly held that the enactment of the ADRA divested the Court of any jurisdiction that it may have had to entertain cases involving bid protest situations under an "implied-in-fact" contract theory pursuant to 28 U.S.C. § 1491(a)(1). FRC Br. at 24 (citing Block v. United States, 66 Fed. Cl. 68, 76 (2005); S.K.J. & Assocs., Inc. v. United States, 67 Fed. Cl. 218 (2005); Lion Raisins, Inc. v. United States, 52 Fed. Cl. 629 (2002)).

FRC then supplies a string cite to cases in which the Court allegedly held otherwise. Id. However, none of those cases, with the exception of L-3 Communications Integrated Sys., L.P. v. United States, 79 Fed. Cl. 453 (2007), and Unified Architecture & Eng'g, Inc. v. United States, 46 Fed. Cl. 56, 60-61 (2000), which are readily distinguishable, even mention the question whether the enactment of the ADRA displaced the old theory that the court addresses bid protests under an "implied in fact" contract theory pursuant to 28 U.S.C.

§ 1491(a)(1).[2]

Further, both L-3 Communications and Unified Architecture are inapposite.

First, both cases involve post-award bid protests under which subject matter jurisdiction is available pursuant to 28 U.S.C. § 1491(b)(1).

Additionally, in L-3 Communications, the Court explicitly asserted jurisdiction under 28 U.S.C. § 1491(b)(1). L-3 Communications, 79 Fed. Cl. at 460. The Court concluded that a claim of bad faith by a procurement official was a "claim of a breach of the implied duty to consider its proposal fairly and honestly is quintessentially a challenge to the procurement process. " Id. at 462. However,

---

[2] See Aero Corp., S.A. v. United States, 38 Fed. Cl. 739, 743 n.2 (1997) (explaining that the "[C]ourt is vested with the authority to consider plaintiff's pre-award bid protest pursuant to the Tucker Act, 28 U.S.C. § 1491(b) (1994), as amended by Administrative Dispute Resolution Act of 1996"); Biltmore Forest Broad. FM, Inc. v. United States, 80 Fed. Cl. 322 (2008) (dismissing case for lack of subject matter jurisdiction and noting, in dicta, that if the court possessed jurisdiction, only available remedy would be under section 1491(b)(2)); Forestry Surveys & Data v. United States, 44 Fed. Cl. 485 (1999) (in post-award bid protest, dismissing claim based upon "plain language of our bid protest jurisdiction . . . 28 U.S.C. § 1491(b)(1)."); Hamilton Sundstrand Power Sys. v. United States, 75 Fed. Cl. 512 (2007) (asserting jurisdiction in post-award bid protest under section 1491(b)(1)); Hunt Bldg. Co. v. United States, 61 Fed. Cl. 243 (2004) (asserting jurisdiction in pre-award bid protest under section 1491(b)(1)); HWA, Inc. v. United States, 78 Fed. Cl. 685 (2007) (asserting jurisdiction in post-award bid protest under section 1491(b)(1)); Phoenix Air Group v. United States, 46 Fed. Cl. 90 (2000) (asserting jurisdiction in post-award bid protest under section 1491(b)(1)); and Wetsel-Oviatt Lumber Co., Inc. v. United States, 40 Fed. Cl. 557 (1998) (pre-ADRA matter -- complaint filed in 1994).

the Court did not base its subject matter jurisdiction upon this argument. Rather, the Court concluded that the implied-in-fact contract theory provided a cause of action in a post-award bid protest. Id. at n.17. The Court did not further opine upon whether such a breach would render the challenged contract award "arbitrary and capricious" as required by the APA. Indeed, that case remains pending. The most that can be taken from this case is that the Government owes a duty of good faith in the award of a contract and that the bad faith award of a contract might be held to be arbitrary and capricious.

Lastly, in Unified Architecture, the Court's assertion of jurisdiction to entertain a single redundant implied-in-fact contract claim under section 1491(a) was mere dicta. The Court explained that "it is unnecessary in this case to consider plaintiff's breach of implied-in-fact contract claim separately and independently from plaintiff's other claims. The very essence of plaintiff's bid protest is that its bid was not 'fairly and honestly' considered." 46 Fed. Cl. at 61.

Accordingly, the Court has never made the clear holding that plaintiffs advance -- that bidders possess a choice of remedies with different standards of review when challenging procurement cancellations: (1) the ultra vires standard mandated by section 1491(b)(1); and (2) the "implied-in-fact" contract theory. As we demonstrated in our initial brief at pages 17-20, such a position is untenable.

## III. FRC Has Not Demonstrated Entitlement To Judgment Upon The Administrative Record

Relying upon its complaint, new factual allegations that first appear in its brief, as well as occasional record facts, FRC argues that DOE impermissibly decided not to obtain deactivation and decommissioning services under the solicitation. As previously demonstrated, the cancellation of a negotiated procurement is an act committed to agency discretion for which there are no legal standards to apply. Further, as discussed above, DOE did not violate any statute of regulation in this case. However, contrary to FRC's assertions, if the Court were to assert jurisdiction to entertain this matter and apply a standard different from the ultra vires standard mandated by 28 U.S.C. § 1491(b)(1), the only standard that could conceivably apply would be the bad faith standard.

However, FRC has abandoned its original theory that DOE knowingly led FRC and the other bidders on, with full knowledge that the agency would cancel the procurement at a later date. "[W]ell nigh irrefragable proof" of such behavior, of course, might indicate a "specific intent to injure" that is necessary to rebut the presumption of good faith. See, e.g., Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1337 (Fed. Cir. 2004) (requiring party to "show almost irrefragable proof" by "clear and convincing evidence of a specific intent to injure"); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1323 n.2 (Fed. Cir.

2003) (citing Spezaferro v. Fed. Aviation Admin., 807 F.2d 169 (Fed. Cir. 1986)) ("to overcome the presumption of good faith, '[t]he proof must be almost irrefragable'"); Am-Pro Protective Agency v. United States, 281 F.3d 1234, 1241 (Fed. Cir. 2002) (noting that "for almost 50 years this court and its predecessor have repeated that we are loath to find to the contrary of good faith, and it takes, and should take, well-nigh irrefragable proof to induce us to do so") (internal quotations and bracketing omitted); Kalvar Corp. v. United States, 543 F.2d 1298, 1301-02 (Cl. Ct. 1976) ("requir[ing] well-nigh irrefragable proof to induce the court to abandon the presumption of good faith dealing").

Nevertheless, FRC's theory of the case has now morphed into five arguments based upon the wrong facts and standard of review. First, FRC attempts to argue that any delay in the solicitation was caused by DOE's "violations of federal procurement law as determined by the Government Accountability Office." FRC Br. at 14. Second, FRC appears to assert that DOE should have known that its budget would be cut and that there would be delays in the EIS, and thus, DOE lacked a "rational basis" for deciding not to acquire any services under the solicitation. FRC Br. at 15 (maintaining that the "fact remains that a possible reduction in the overall EM [environmental management] budget was not reasonably a surprise to anyone given the then-current world

circumstances and status of discussions on the federal budget that occurred throughout calendar year 2005.”). Third, FRC avers that the fact that the parties were on notice that only CLIN-1 (deactivation) might be performed rendered the concerns of the State of Washington and the DOE Inspector General irrelevant to the decision to cancel. Id. at 15-16. Fourth, FRC maintains that the expected delay in an EIS for the decommissioning of the FFTF reactor also could not be relevant to the decision to cancel. Lastly, FRC asserts that the administrative record did not support statements that it would be more cost effective to cancel the solicitation, rather than terminate portions of the existing, valid contract with Fluor. In addition to failing to assert any “specific intent to injure,” these assertions fail to demonstrate that the cancellation was unlawful.

FRC’s first argument that delays in the solicitation were caused by DOE’s litigation of the GAO protest are absurd. In hindsight, we now know the GAO sustained FRC’s protest and denied EPW Closure Services, LLC’s (“EPW’s”) protest. Presumably, FRC believes that DOE should have immediately awarded the contract to it or taken corrective action with respect to its protest (but not EPW’s protest). In addition to the absurdity of FRC’s argument, a decision to litigate a bid protest is certainly not an “agency action” reviewable under the APA and also is “committed to agency discretion” under 5 U.S.C. § 701(a)(2).

FRC's second argument that DOE should have known that its budget would be cut is also unsupported. Indeed, FRC was on notice of the same "then-current world circumstances and status of discussions on the federal budget," FRC Br. at 15, that FRC charges DOE with unlawfully disregarding. Moreover, as we demonstrated in our initial brief, other relevant information, including the January 2005 letter from the State of Washington and the Inspector General's report were publicly available. In sum, what "came as no surprise," id., to DOE also "came as no surprise to FRC.

The third and fourth assertions attempt to belittle the importance of facts learned in the Fall of 2005 that led to the cancellation of the solicitation. AR4. Although DOE believed that the amended solicitation addressed the State's and Inspector General's concerns at the time of issuance, subsequent events, including learning of additional delay in the EIS for new reasons (the likely integration of the FFTF EIS with a comprehensive groundwater EIS) and the significant budget cut returned these issues to the forefront. Id.

Finally, FRC's argument that the record evidence does not support statements concerning cost effectiveness ignores the record. As previously noted, the "options" chart at AR12 estimates that the costs of finishing CLIN1 and then conducting surveillance and maintenance operations would be the same for either

the incumbent contractor or a winning small business, i.e., $46 million per year from 2008 to 2010. FRC's speculation as to comparative costs for both CLIN 1 and 2 is thus irrelevant. FRC Br. at 16-17.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss this action pursuant to Rule 12(b)(1) or, in the alternative, enter judgment in favor of the United States pursuant to Rule 52.1.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ BRYANT G. SNEE
Deputy Director

/s/ STEPHEN C. TOSINI
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-5196
Fax: (202) 514-7969
Attorneys for Defendant

OF COUNSEL:
DON W. CROCKETT
Office of the General Counsel
Department of Energy
Washington, D.C.

July 2, 2008

**CERTIFICATE OF FILING**

I hereby certify that on July 2, 2008, a copy of the foregoing "REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Stephen C. Tosini